859 A.2d 721 (2004)
372 N.J. Super. 468
Stanley KOSSUP, Plaintiff-Appellant,
v.
BOARD OF TRUSTEES, POLICE AND FIREMAN'S RETIREMENT SYSTEM, Defendant-Respondent.
Superior Court of New Jersey, Appellate Division.
Argued September 14, 2004.
Decided October 21, 2004.
*722 Robert Rohrberger, Livingston, argued the cause for appellant (Fox & Fox, attorneys; Mr. Rohrberger and David A. Ward, on the brief).
Susanne Culliton, Deputy Attorney General, argued the cause for respondent (Peter C. Harvey, Attorney General, attorney; Michael Haas, Assistant Attorney General, of counsel; Ms. Culliton, on the brief).
Before Judges STERN, WECKER and S.L. REISNER.
The opinion of the court was delivered by
S.L. REISNER, J.A.D.
Stanley Kossup (Kossup) appeals a final determination of the Board of Trustees of the Police and Firemen's Retirement System (Board) denying him pension benefits from July 1, 1998, when he retired as City of Newark Fire Chief, through June 30, 2002, when he retired from the position of Fire Director for the City of Newark. We reverse.

I
This case arises from an unusual set of facts. Kossup commenced employment as a City of Newark firefighter in 1959. In 1979 he was appointed as Fire Chief, a civil service-protected operational position involving the direct supervision of firefighters, including personal attendance at multiple alarm fires. In 1988, Kossup was promoted to Director of the Fire Department (Fire Director or Director), a civilian *723 administrative and policy position that did not involve supervising firefighting operations. Since as Director he served at the pleasure of the Mayor and had no civil service protection, Kossup took a leave of absence from his fire chief position in order to protect his right to return to that civil service position.
In 1991, the City of Newark was experiencing a severe fiscal crisis. As a result, the Mayor determined to temporarily combine the positions of Fire Chief and Fire Director and also to combine the positions of Police Chief and Police Director. At the Mayor's request, commencing in 1991, Kossup agreed to perform both the fire chief and fire director positions. He continued to receive the Director's salary, which was higher than the Chief's salary; he received no extra salary for taking on the additional duties as chief.
Kossup had enrolled in the Police and Firemen's Retirement System (PFRS) from the beginning of his employment with the City and continued to contribute while he was Fire Director. See N.J.S.A. 43:16A-3.1. When he served in the dual role of Director and Fire Chief, he contributed to the PFRS system at the lower salary rate applicable to the Chief position.[1] Therefore, he was accumulating pension credit based on a lower salary than if he had contributed based on the director's salary.
In 1998, when he was simultaneously serving in both positions, the PFRS Board required him to retire from the Fire Chief position, because he had reached age sixty-five. By statute, N.J.S.A. 43:16A-5, all members of PFRS must retire at that age. Accordingly, he retired as Fire Chief, effective July 1, 1998. It is undisputed that he applied for his PFRS pension based on the $85,000 salary of a Fire Chief and not based on the higher Fire Director's salary. On July 20, 1998, the Board approved Kossup's pension based on a percentage of the Chief's salary.
At the time Kossup retired in 1998, according to Mayor James, the City's financial situation had improved to the point where it was again possible to separate the Fire Chief and Fire Director positions as well as the Police Chief and Police Director positions. Because Kossup had extensive experience in firefighting and was considered the best candidate for the Director position, the Mayor re-appointed Kossup as Director, effective July 1, 1998. A Fire Captain, Edward Dunham, was promoted to replace Kossup as Fire Chief.[2]
It is undisputed that after Kossup was appointed solely as Director, he performed only administrative and policy duties and did not perform any of the duties of a Fire Chief. However, after learning that he was continuing to serve as Director, the Board notified Kossup on November 19, 1998, that he was not eligible for retirement benefits because he remained in a title (Director) that the Board contended was covered by the PFRS system. He appealed, and after a plenary hearing, an administrative law judge (ALJ) recommended that he be allowed to collect his pension, based on the ALJ's conclusion *724 that the Director position was not covered by PFRS.
The Board rejected the ALJ's decision, concluding that the Director's position was covered by PFRS, because N.J.S.A. 43:16A-3.1 specifically permits a firefighter promoted to Director to remain in PFRS. The Board also considered N.J.S.A. 43:16A-15.3, which provides that a former PFRS member who becomes re-employed in a PFRS covered position may not collect his PFRS pension so long as he holds that position. The Board further concluded that Kossup had not effectively retired in 1998 because he continued to perform the duties of Director.
However, in its decision, the Board also noted that while Kossup was prohibited from receiving his pension because he was in the Director's position, which was covered by PFRS, he was also prohibited from contributing to the PFRS pension fund after 1998, because he had reached the mandatory PFRS retirement age of sixty-five in 1998. ("However, since Mr. Kossup reached mandatory retirement on July 1, 1998, he cannot reenroll in the PFRS nor can he contribute to the PFRS from July 1, 1998 through June 30, 2002.") Hence when he ultimately retired from the Director position in 2002, his pension would be based only on his lower salary as Fire Chief through June of 1998.

II
In reviewing the Board's decision, we will defer to the agency's factual findings so long as they are supported by sufficient, credible evidence in the record. Clowes v. Terminix Int'l, Inc., 109 N.J. 575, 586-87, 538 A.2d 794 (1988); Henry v. Rahway State Prison, 81 N.J. 571, 579-80, 410 A.2d 686 (1980). However, we are "in no way bound by the agency's interpretation of a statute or its determination of a strictly legal issue." Mayflower Sec. v. Bureau of Sec., 64 N.J. 85, 93, 312 A.2d 497 (1973).
Having reviewed the factual record and the legislative history of the PFRS statute, N.J.S.A. 43:16A-1, et seq., we conclude that the Board's determination was erroneous. Under the unique facts of this case, denying Kossup his pension would be inequitable as well as inconsistent with the legislative policy, expressed in N.J.S.A. 43:16A-3.1, to benefit rather than penalize firefighters who are promoted into administrative fire director positions. Further, since a PFRS member who retires at age sixty-five can no longer re-enroll in or contribute to the PFRS system, we conclude that N.J.S.A. 43:16A-15.3 does not bar such a retiree from taking a position as fire director while collecting a PFRS pension.
A review of the history of the PFRS pension legislation is fundamental to our conclusion. From its inception, the PFRS (and the analogous Consolidated Police and Firemen's Pension Fund, N.J.S.A. 43:16-1) provided police and firefighters with a more generous pension than the State's other pension systems, such as the Public Employee's Retirement System (PERS). See Testimony of L. Mason Neely, Chairman, Pension Study Comm., Assembly State Government Comm. Hearing on S-2602, Feb. 6, 1989, at 41, 50. Consequently, there was considerable impetus for employees to try to qualify for membership.
In Tubridy v. Consol. Police & Firemen's Pension Fund Comm'n., 84 N.J.Super. 257, 201 A.2d 736 (App.Div.1964), we held that a civilian fire commissioner would not qualify for membership in the Consolidated Police and Firemen's Pension Fund (Pension Fund) because the duties of the position were administrative and did not involve "active participation in firefighting." *725 Id. at 263, 201 A.2d 736. Thus, a veteran firefighter who was promoted to an appointive administrative position such as fire commissioner could not obtain a pension from the Pension Fund based on the higher commissioner's salary.
In 1965, apparently in response to Tubridy, the police and firemen's pension statutes were amended. The amendment provided that a police officer or firefighter who was covered by PFRS or by the Pension Fund immediately prior to being appointed to an "appointive administrative or supervisory" position could remain in the pension system while serving in that administrative or supervisory position. N.J.S.A. 43:16-17.2; N.J.S.A. 43:16A-3.1; L. 1965, c. 142, § 1; L. 1965, c. 186 § 1. While there is no legislative history for these amendments, subsequent amendments to section 3.1 confirmed the Legislature's understanding that this section "permits members of the Police and Firemen's Retirement System (PFRS) to continue membership in the retirement system if they serve in an appointive administrative or supervisory capacity ..." Statement to A.975, (Introduced Feb. 14, 1992)(enacted as L. 1965, c. 186).
Following these amendments, an appointive fire director position was essentially a hybrid. If the appointee did not come directly from a police or firefighting position covered by PFRS, he or she would be covered by PERS while serving as director. See Fiscal Estimate to A.975, (July 16, 1992) (enacted as L. 1965, c. 186). If the appointee was in PFRS at the time of appointment, he or she could remain in PFRS. N.J.S.A. 43:16A-3.1. The amendments thus permitted police or firefighters to obtain promotion to administrative fire or police director positions without forfeiting their ability to qualify for a PFRS pension.
We disagree with Kossup's contention that section 3.1 only permits a director to belong to PFRS if the director position involves firefighting duties or the direct supervision of firefighters. The definition section of the PFRS statute defines firefighters, covered by PFRS, as those actively involved in firefighting or those supervisors whose jobs may involve firefighting activity, such as fire chiefs, who attend the scene and are responsible for overseeing activities at fires:

"Fireman" shall mean a permanent, full-time employee of a firefighting unit whose primary duties include the control and extinguishment of fires and who is subject to the training and physical and mental fitness requirements applicable to the position of municipal firefighter established by an agency authorized to establish these requirements on a Statewide basis, or comparable training and physical and mental fitness requirements as determined by the board of trustees. The term shall also include an administrative or supervisory employee of a firefighting unit whose duties include general or direct supervision of employees engaged in fire control and extinguishment activities or training responsibility for these employees and a requirement for engagement in fire control and extinguishment activities if necessary. As used in this paragraph, "firefighting unit" shall mean a municipal fire department, a fire district, or an agency of a county or the State which is responsible for control and extinguishment of fires.
[N.J.S.A. 43:16A-1(2)(b)(emphasis added).]
Section 3.1 defines an additional category of persons eligible for PFRS, i.e., those who serve in appointive administrative or supervisory positions:

*726 Service with a law enforcement unit or firefighting unit to which the provisions of P.L. 1944, c. 255 (C.43:16A-1 et seq.) apply in an appointive capacity with administrative or supervisory duties over policemen or firemen or any combination thereof by any person who not more than six months prior to such service served as a member of that or any other law enforcement unit or firefighting unit, as the term "member" is defined in section 1 of P.L. 1944, c. 255 (C.43:16A-1), shall be deemed to be service as a member under and for all the purposes of the provisions of the act of which this act is a supplement.
[N.J.S.A. 43:16A-3.1.]
If such persons are also required to be engaged in firefighting duties, then section 3.1 would be surplusage. See Franklin Tower One, L.L.C. v. N.M., 157 N.J. 602, 613, 725 A.2d 1104 (1999). There would be no need for this provision, because supervisors and administrators such as fire chiefs, who engage in firefighting, are already covered under section 1(2)(b). In fact, when the Legislature amended section 3.1 in 2000 to extend its benefits to State employees, the legislative history specifically referred to the applicability of section 3.1 to a person "in an appointive administrative or supervisory position, such as public safety director." Sponsor's Statement to S.579 (enacted as L. 2000, c. 166). Consequently, we disagree with the ALJ's initial decision; we must look further, to the additional history of section 3.1.
The PFRS statute was amended several times to expand the number of job titles eligible for membership. In 1989, however, the Legislature substantially restricted eligibility for PFRS membership as a trade-off for substantially increasing retirement benefits for those who remained eligible. L. 1989, c. 204. The amendments were aimed at restricting membership to those who were actually involved in police work or firefighting, N.J.S.A. 43:16A-1(2)(b), and a limited category of supervisors and administrators directly involved in overseeing police and fire departments. N.J.S.A. 43:16A-3.1. Contemporaneous hearings and legislative statements accompanying the legislation indicate that the higher benefits were seen as an incentive to encourage police and firefighters to retire at a relatively early age in order to promote an influx of younger, more physically able candidates. Police and firefighters were not only encouraged to retire early; unlike other public employees, they were absolutely required to retire at age sixty-five.
The reason why we give better benefits [in PFRS] is because the nature of the duties themselves requires a level of physical attributes which is found, statistically speaking, among younger members, and consequently we want to induce this turnover within the system ... the benefits here are ... compensation to facilitate retirement at a younger age, in order to protect the public.
[Testimony of Douglas Forrester, Dir. of Div. of Pensions, Assembly State Government Comm. Hearing on S-2602, Feb. 6, 1989, at 18.]
The legislators were well aware, however, that PFRS retirees would frequently take other government employment after their PFRS retirement. In the committee hearings on the 1989 amendments, there were repeated references to this practice, and it was a fact of life the Legislature evidently accepted. It was part of the trade-off for encouraging, and requiring, police and firefighters to retire from their PFRS covered positions. See, e.g., Testimony of Douglas Forrester at 31-33; testimony of L. Mason Neely at 39-40. If the Legislature disapproved this practice, they *727 could have prohibited it when they amended the PFRS statute to provide increased pension benefits to PFRS retirees.
As previously stated, we conclude that for pension purposes, section 3.1 makes the director position a hybrid, in which the pension system covering the position depends on the status of the person who holds the job. If the person is a member of PFRS and is still eligible to contribute to the system, then the position is a PFRS position. If the appointee is not enrolled in PFRS or is not eligible to re-enroll or contribute, then the position is not covered by PFRS.[3] The factual record supports this conclusion. Prior to Kossup's appointment as director in 1988, the position was held by Claude Coleman. Since Coleman was a member of PFRS at the time of his appointment he remained in PFRS when he served as director. However, the director who preceded Coleman, John Caulfield, had never served as a firefighter and was not a member of PFRS at the time he was appointed director; he therefore was covered by PERS when he served as director.
This conclusion is further bolstered by N.J.S.A. 43:16A-15.3, which requires that a former, retired member of the pension system who later takes a job covered by the same pension system "shall be re-enrolled in the retirement system and shall contribute thereto at a rate based on his age ..." As a Fire Chief, Kossup's right to participate in the PFRS system, and hence his derivative right to be in PFRS while a Fire Director, was tied to his age. Once he turned sixty-five, he had to retire as a Fire Chief and, as the Board's decision recognized, he could not be re-enrolled in or contribute to PFRS. Therefore we conclude that section 3.1 would neither permit nor require him to be covered by PFRS upon his reappointment as director, and section 15.3 would not preclude him from collecting his Fire Chief pension while serving as Fire Director.
The legislative history of the 2000 amendments, quoted in the Board's decision, does not change our conclusion. In the comments to that bill, enacted as L. 2000, c. 166, the Legislature noted that a PFRS retiree who took a director position would have to cease collecting pension benefits, re-enroll in PFRS and resume making pension contributions. However, this comment was made in the context of a bill that expanded the category of employees who could take director positions and still remain in PFRS. Sponsor's Statement to S.579 (enacted as L. 2000, c. 166). The comment was explaining the additional benefit to such directors; by re-enrolling in PFRS and continuing to contribute, they would ultimately be able to collect a higher pension when they retired from the director position. Obviously, this requirement would only apply to employees who were still eligible to re-enroll in and contribute to PFRS. Former members who had retired because they had reached age sixty-five could neither re-enroll in nor contribute to PFRS. Hence, section 15.3 would not apply to them. At oral argument, the Board's attorney conceded that if a former PFRS member retired at age sixty-five with insufficient years of service to qualify for a pension, and subsequently took a director position, that employee could not re-enroll in PERS and continue to make contributions so as to qualify for a pension.
*728 Since Kossup had reached the mandatory retirement age of sixty-five and could not re-enroll in or contribute to PFRS, section 15.3 did not prohibit him from collecting his PFRS pension when he was reappointed to the director position in July 1998. We conclude that this result is most consistent with the legislative history and purpose of section 3.1. We perceive no inequity in allowing Kossup to collect his pension. Kossup had retired from the fire chief position, which was the position on which his pension was based. He had not sought to boost his pension by making contributions based on the higher director's salary, nor had he applied for a pension based on that higher salary. Further, since section 3.1 only permits continued PFRS membership if a PFRS member takes a director position within six months after leaving his last PFRS-covered position, Kossup could have waited six months and taken a director position in Newark or any other municipality and there would have been no question of his right to collect his fire chief pension.[4]

III
Firefighters are required to retire at age sixty-five in order to protect public safety and to make room for younger, presumably more physically fit fire candidates. In return, they receive a generous pension. When the Board required Kossup to retire from his fire chief position, they required him to give up a protected civil service job; in exchange for forfeiting his protected position, he was entitled to a pension. While Kossup was entitled to participate in PFRS while he served as Fire Director prior to his retirement, his participation was designed to allow him to attain a PFRS pension, not to deny him a pension. The purpose of the legislation allowing that participation was to protect, not hurt, firefighters who accepted promotions to supervisory positions such as fire director, by allowing them to continue in the more generous PFRS system instead of the PERS system ordinarily applicable to fire director positions. Once Kossup attained mandatory retirement age as Fire Chief and was required by the Board to retire, he had obtained the benefit (a PFRS pension) contemplated by the law allowing continued PFRS membership during service in the civilian Fire Director position. At that point, as the Board itself noted, he could no longer enroll in or contribute to PFRS, and therefore, for Kossup, the Fire Director position was no longer a "PFRS covered" position.
Because we conclude that Kossup was erroneously denied his pension and required to reimburse the PFRS for pension payments he had received between July 1998 and his retirement from the director position in 2002, we reverse and remand to the Board with direction that the Board return to Kossup his full pension benefits for the time period from July 1, 1998 through June 30, 2002.
Reversed.
NOTES
[1] The record does not reflect whether, for the three years he served solely as Director, Kossup contributed based on the Director's salary or based on the salary of the Chief position from which he was on leave.
[2] The Newark City Ordinance defines the duties of Fire Chief and Fire Director, and specifically provides that "The Director of the Fire Department shall, prior to his appointment, have had experience in a responsible administrative capacity relating to fire fighting, or the prevention and control of fire risks." Newark City Code, sec. 2:21-1.3. Hence, former fire chiefs and other experienced firefighters would appear to be desirable candidates for the job.
[3] As the legislators recognized at the hearings on the 1989 amendments, if a PFRS retiree takes a job covered by PERS, he can earn the salary for that position but cannot enroll in or contribute to PERS, because public employees may not earn or collect two pensions. See Testimony of Forrester at 32.
[4] The Board's factual contention on this appeal, that Kossup continued performing the same duties after retirement, is precluded by the evidentiary record. The parties stipulated that after retirement Kossup ceased performing his fire chief duties and performed only administrative duties.