966 A.2d 1020

ABRAHAM HEMSEY, PETITIONER–APPELLANT, v. BOARD OF TRUSTEES, POLICE & FIREMEN'S RETIREMENT SYSTEM, RESPONDENT–RESPONDENT.

Argued November 17, 2008—Decided March 24, 2009.

216

*Charles J. Uliano,* argued the cause for appellant (*Chamlin, Rosen, Uliano & Witherington,* attorneys; *Andrew T. Walsh,* on the brief).

*Eileen Schlindwein Den Bleyker,* Deputy Attorney General, argued the cause for respondent (*Anne Milgram,* Attorney General of New Jersey, attorney; *Patrick DeAlmeida,* Assistant Attorney General, of counsel).

*Stephen E. Trimboli,* argued the cause for *amicus curiae* City of Trenton (*Knapp, Trimboli & Prusinowski,* attorneys).

Justice WALLACE, delivered the opinion of the Court.

In this case we determine whether the Board of Trustees of the Police and Firemen's Retirement System (Board) properly cancelled the retirement allowance of a retired police officer and required him to re-enroll in the Police and Firemen's Retirement System (PFRS) when he became reemployed, first as a civilian consultant to the City of Trenton's (City's) Communications Section and later, as Director of the Communications Section. The Board determined that the employee performed essentially the same duties as a consultant as he did prior to his retirement. As

a result, it required him to re-enroll in PFRS and repay the benefits he had received. The Appellate Division affirmed. We disagree and hold that the employee did not satisfy the statutory requirements for mandatory re-enrollment in PFRS because there was insufficient credible evidence to conclude that he exercised administrative or supervisory duties over police officers or firefighters.

I.

The facts are largely undisputed. Hemsey was hired as a police officer by the City on October 1, 1973, and he spent much of his career as a police dispatcher assigned to the Communications Section. He explained that civilians answered 9-1-1 calls and transferred them to the Police Department, where a police officer would process the call and dispatch it to a police unit. Hemsey stated that around 1989, the City decided to have civilians handle the entire communications function, but it took a while to fully implement the change. In 1995, the last police dispatchers in the Communications Section were reassigned, leaving only civilians. Consequently, Hemsey was removed as a police dispatcher and placed on a special detail to develop a geographic file of every address in the City to support the transition to a computer-aided dispatch system (CAD). Hemsey worked on that project for about two years before the City "went live with the CAD."

On October 1, 1998, Hemsey retired from the Police Department and began receiving retirement benefits from PFRS. At the time of his retirement, Hemsey was a police officer—patrolman detective by rank. In December 1998, the Acting Director of Public Safety, Dennis Keenan, asked Hemsey if he would be interested in returning to the Communications Section in a civilian capacity. Hemsey expressed an interest, but declined because he did not satisfy the residency requirements for civilian employees.

Subsequently, the Trenton City Council passed a resolution authorizing the Mayor and City Clerk to enter into a "consulting contract" with Hemsey for "emergency communication center

services without public bids." Hemsey and the City entered into an agreement dated December 31, 1998. The agreement provided that Hemsey would work under the direction of the Trenton Police Department Commanding Officer, Lieutenant Gary Thacker, and Fire Captain Donald Kanka. Further, the agreement provided in part that Hemsey would:

evaluate and work with a group of Trenton City Police and Fire Communication Center personnel, including line supervisors, in a centralized communications center environment. Duties include, but are not limited to, receiving and recording emergency calls for police, fire, and ambulance service. Monitoring the transmission of necessary alarms to appropriate personnel and, when necessary, dispatching needed equipment to proper locations; operating and training all subordinate employees in the operation of a variety of communications equipment, and other related duties as required are all additional duties.

The agreement also provided that Hemsey would be paid $30 per hour for up to forty hours per week. Hemsey commenced his employment with the City on January 11, 1999. He submitted pay vouchers on a monthly basis, and his income was reported on an IRS Form 1099.

On June 22, 1999, the City passed Ordinance 99–52, which created a Police Department headed by a Police Director and a Fire Department headed by a Fire Director. Following the adoption of the Ordinance, the Communications Section was transferred to the purview of the City's Department of Administration, and the position of Director of Communications was created. On July 12, 1999, more than nine months after his retirement from the police force, Hemsey was appointed to the civilian position of Director of Communications. In that position, he prepared the budget, established policies, and controlled discipline.

Sometime in 2001, the Division of Pensions and Benefits (Division) requested information from the City regarding Hemsey's employment. After reviewing the requested information, the Division informed the City, by letter dated November 28, 2001, that Hemsey could continue to work as the Director of Communications and receive his retirement benefits because the Director position was not PFRS-eligible.

On March 20, 2002, the Division notified the City that it had received a second inquiry regarding Hemsey's employment. The Division requested the "Organization Chart indicating to whom [Hemsey] reports and names and social security numbers/pension numbers for each employee that reports to [Hemsey]." The City furnished the requested information to the Division.

In July 2002, Hemsey appeared before the Board to answer questions regarding his employment status. The Board subsequently asked Hemsey to submit responses to the Internal Revenue Service's twenty-factor test to determine whether he was operating as an employee or independent contractor when he was a consultant to the City. Hemsey provided responses to the Board's inquiry.

On October 22, 2002, the Board informed Hemsey that he was required to re-enroll in PFRS under *N.J.S.A.* 43:16A–15.3 because from January 11, 1999 to July 11, 1999, he was an employee of the City "perform[ing] essentially the same PFRS job duties" after retirement as he did prior to retirement. The Board cancelled Hemsey's retirement allowance retroactive to January 1, 1999 and required him to repay the benefits he had received. Hemsey appealed that decision, and the matter was heard as a contested case in the Office of Administrative Law. Beginning in November 2002, Hemsey no longer received his pension.

In November and December 2004, an Administrative Law Judge (ALJ) heard testimony in Hemsey's matter. Hemsey testified that he did not supervise or exercise administrative duties over any police or fire personnel at any time after he retired in October 1998. He stated that while serving as Director of Communications, he was responsible for preparing a budget, purchasing relevant goods and services, setting policy, controlling discipline, and hiring and firing, but that he did not possess police powers or supervise police personnel.

Leonard Cipriano, a Trenton police officer and President of Trenton PBA Local 11, testified on behalf of the Board concerning Hemsey's post-retirement employment. Cipriano claimed that

when Hemsey was serving under the consulting contract, Detectives Maurice Crosby and Charles Parrish "[s]tated that during the absence of their immediate supervisor, they believed they were under the command of Abe Hemsey." However, during cross-examination, Cipriano testified that he could not recall when Crosby or Parrish told him they were sometimes under Hemsey's command, and he could not describe how Hemsey supervised the two detectives. In addition, Cipriano stated that he knew Hemsey did not have any police powers after retirement and that civilians could not direct police duties.

Charles Parrish and Maurice Crosby testified on behalf of the Board, and both contradicted parts of Cipriano's testimony. For instance, Parrish did not recall ever having a conversation with Cipriano concerning Hemsey and stated that Hemsey never supervised him. Crosby believed that when Hemsey was Director of Communications, Vince Dixon, an individual who reported to Hemsey, was his "functional" supervisor. However, Crosby also admitted that Hemsey never directly supervised him, and he could not recall ever telling Cipriano that Hemsey supervised him.

On September 15, 2005, the ALJ concluded that the Board properly determined that Hemsey was required to re-enroll in PFRS because he was an employee of the City performing essentially the same PFRS job duties after retirement as he did prior to retirement. The judge found that the written employment contract required Hemsey to evaluate and work with police and fire personnel and to train all subordinate employees.

The Board issued its final administrative decision in November 2005, agreeing with the ALJ that Hemsey was an employee and not an independent contractor during the time he served under the consulting contract. In applying *N.J.S.A.* 43:16A–3.1, the Board accepted the ALJ's factual finding that Hemsey was in a supervisory position over other PFRS personnel assigned to the Communications Center. Consequently, the Board cancelled Hemsey's retirement benefits, required him to re-enroll in PFRS, and ordered him to pay back most of the benefits he had received.

Hemsey appealed, and the Appellate Division affirmed in a published opinion. *Hemsey v. Bd. of Trs., Police & Firemen's Ret. Sys.*, 393 *N.J.Super.* 524, 925 *A.*2d 1 (2007). The panel found sufficient credible evidence to support the Board's determination that both of Hemsey's post-retirement positions were covered by PFRS. *Id.* at 541, 925 *A.*2d 1. The panel concluded that Hemsey's retirement benefits were properly cancelled and he was required to re-enroll in PFRS. *Id.* at 541–42, 925 *A.*2d 1.

We granted Hemsey's petition for certification, 196 *N.J.* 85, 951 *A.*2d 1038 (2008), and the City's motion to appear as amicus curiae.

## II.

Hemsey contends that he was not required to re-enroll in PFRS under *N.J.S.A.* 43:16A–15.3 because his post-retirement positions were not PFRS-eligible. He asserts that he was not part of a police unit and did not exercise administrative or supervisory powers over police or fire personnel as required by *N.J.S.A.* 43:16A–3.1 to maintain membership in PFRS. Further, he argues that *N.J.S.A.* 43:16A–15.3 has no applicability because he returned to work as an independent contractor, not a City employee. He urges that the Board engaged in impermissible rulemaking by employing the IRS twenty-factor test to conclude that he returned as an employee. Alternatively, Hemsey maintains that the Board is equitably estopped from compelling repayment of the retirement benefits that he received between November 28, 2001 and October 22, 2002 because, on November 28, 2001, the Board confirmed that Hemsey could continue working as Director of Communications without jeopardizing his pension.

In contrast, the Board argues that there is substantial credible evidence to support its conclusion that Hemsey's employment as a Communications Section consultant was PFRS-eligible under *N.J.S.A.* 43:16A–3.1. The Board claims that the contract language and evidence presented at the hearing established that Hemsey exercised supervisory duties over police officers and firefighters. The Board urges that this Court should decline to consider

Hemsey's argument concerning the applicability of the IRS twenty-factor test to determine whether he served as an employee or independent contractor, because he failed to raise that argument before the Board. Finally, the Board argues that Hemsey failed to establish the elements of equitable estoppel, a doctrine that is "rarely invoked" against a governmental entity.

Amicus, City of Trenton, argues that the Board misapplied *N.J.S.A.* 43:16A-3.1, and that Hemsey did not meet the statutory requirements to re-enroll in PFRS. The City contends that Hemsey was not "appointed" to his consultant position, and that he did not exercise administrative or supervisory duties over police officers or firefighters while working in that role. Additionally, the City urges that Hemsey's position as Director of Communications was not PFRS-eligible because it commenced more than six months after his retirement, and it did not constitute service with a law enforcement unit. The City notes that *N.J.S.A.* 43:16A-3.1 makes no reference to the employee "performing the same basic duties" as he performed prior to retirement. Further, the City argues that requiring Hemsey to re-enroll in PFRS would be contrary to the Legislature's intent of applying the statute to a limited category of supervisors and administrators directly involved in overseeing police and fire departments.

## III.

### A.

We begin our analysis with the oft-stated principle that judicial review of an administrative agency action is limited. *Aqua Beach Condo. Ass'n v. Dep't of Cmty. Affairs,* 186 *N.J.* 5, 15, 890 *A.*2d 922 (2006). We recognize that agencies have "expertise and superior knowledge ... in their specialized fields." *In re License Issued to Zahl,* 186 *N.J.* 341, 353, 895 *A.*2d 437 (2006) (quotations omitted). Consequently, "an administrative agency's final quasi-judicial decision will be sustained unless there is a clear showing that it is arbitrary, capricious, or unreasonable, or that it

lacks fair support in the record." *In re Herrmann*, 192 *N.J.* 19, 27–28, 926 *A.*2d 350 (2007). Nevertheless, in reviewing agency actions, an appellate court is "in no way bound by the agency's interpretation of a statute or its determination of a strictly legal issue." *In re Carter*, 191 *N.J.* 474, 483, 924 *A.*2d 525 (2007) (quoting *Mayflower Sec. Co. v. Bureau of Sec.*, 64 *N.J.* 85, 93, 312 *A.*2d 497 (1973)).

### B.

Before turning to Hemsey's arguments, we note the relevant statutes that control this matter. Chapter 16A of Title 43 outlines the requirements for membership in the Police and Firemen's Retirement System. *See N.J.S.A.* 43:16A–1 to –68. To protect against a retired PFRS member receiving retirement benefits at the same time he or she is receiving a salary from a PFRS-covered position, *N.J.S.A.* 43:16A–15.3 provides in part that

> [i]f a former member of the retirement system who has been granted a retirement allowance for any cause other than disability, *becomes employed again in a position which makes him eligible to be a member of the retirement system*, his retirement allowance and the right to any death benefit as a result of his former membership, shall be canceled until he again retires.
>
> Such person shall be reenrolled in the retirement system. . . .
>
> [(Emphasis added).]

Thus, a member of PFRS who retires and later accepts employment in a PFRS-covered position will lose his or her pension benefits and must re-enroll in PFRS.

As it concerns this matter, a position is eligible for inclusion in PFRS if it satisfies the requirements of *N.J.S.A.* 43:16A–3.1. That section provides that

> [s]ervice with a law enforcement unit or firefighting unit to which the provisions of P.L. 1944, c. 255 (43:16A–1 et seq.) apply in an appointive capacity *with administrative or supervisory duties over policemen or firemen or any combination thereof by any person who not more than six months prior to such service served as a member of that or any other law enforcement unit* or firefighting unit, as the term "member" is defined in section 1 of P.L. 1944, c. 255 (C.43:16A–1), shall be deemed to be service as a member under and for all the purposes of the provisions of the act of which this act is a supplement.
>
> [*N.J.S.A.* 43:16A–3.1 (emphasis added).]

The Appellate Division recently reviewed part of the legislative history of the PFRS pension legislation in *Kossup v. Bd. of Trs., Police & Firemen's Ret. Sys.*, 372 *N.J.Super.* 468, 473–78, 859 *A.*2d 721 (App.Div.2004). In that case, the panel noted that PFRS has afforded police officers and firefighters more generous pension benefits than other public service pension systems. *Id.* at 473, 859 *A.*2d 721. In tracing the legislative history, the panel declared that in 1965, the Legislature amended *N.J.S.A.* 43:16A–3.1 to permit "a police officer or firefighter who was covered by PFRS ... immediately prior to being appointed to an 'appointive administrative or supervisory' position" to remain eligible for inclusion in PFRS. *Id.* at 473–74, 859 *A.*2d 721. In so doing, the Legislature acted to broaden the scope of *N.J.S.A.* 43:16A–3.1. *See id.* at 474, 859 *A.*2d 721.

Beyond the legislative history related in *Kossup*, in 1992 the Legislature again expanded the group of individuals capable of using *N.J.S.A.* 43:16A–3.1 to remain enrolled in PFRS while working in an appointive administrative or supervisory position. *See L.* 1992, *c.* 73, § 1. The previous version of the statute allowed continued membership to individuals assuming appointive administrative or supervisory positions *immediately* following a PFRS-covered position, but the 1992 amendment expanded those eligible for continued PFRS membership to individuals receiving an appointive administrative or supervisory position *no more than six months* after serving in a PFRS-covered position. *Ibid.*

The Legislature most recently amended *N.J.S.A.* 43:16A–3.1 in 2000. *See L.* 2000, *c.* 166, § 1. Important for our discussion, the 2000 amendment altered the language "in an appointive administrative or supervisory capacity" to read "in an appointive capacity with *administrative or supervisory duties over policemen or firemen." Ibid.* (emphasis added). Thus, the individual must not only serve in an appointed administrative or supervisory position, but he or she also must perform those duties "over policemen or firemen." *Ibid.*

Therefore, in its current form, *N.J.S.A.* 43:16A–3.1 sets forth four requirements that an employee must establish to be eligible to continue or to re-enroll as a PFRS member: (1) current service with a law enforcement unit or firefighting unit; (2) in an appointive capacity; (3) with administrative or supervisory duties over police officers or firefighters; and (4) service as a member of that or any law enforcement or firefighting unit less than six months prior to any appointment.

## C.

We turn now to apply the statutory requirements to the facts in this matter. Hemsey's principal argument, joined in by the City, is that his position as a consultant to the Communications Section did not provide him with the statutorily required administrative or supervisory duties over police officers or firefighters to require him to re-enroll in PFRS.

Although the pension regulations do not define the phrase "administrative or supervisory duties over policemen or firemen" as it is used in *N.J.S.A.* 43:16A–3.1, they describe administrative or supervisory duties for the purpose of meeting the statutory definitions of "police officer" and "firefighter." *See N.J.A.C.* 17:4–2.1(c), (d).[1] The regulations provide that "administrative" duties include "preparing or recommending budgets[,] contracting for goods or services, processing employment actions, managing information systems, and the provision of administrative support." *N.J.A.C.* 17:4–2.1(c)(1). Further, the regulations provide that "supervisory" duties include "conducting performance evaluations, disciplining, adjusting the grievances, rewarding, and assigning and directing the work of non-supervisory police officers or fire-

[1] *N.J.S.A.* 43:16A–1 defines the terms "policeman" and "fireman." Included within the definition of "policeman" is "an *administrative or supervisory employee* of a law enforcement unit." *N.J.S.A.* 43:16A–1(2)(a)(iv) (emphasis added). Similarly, included within the definition of "fireman" is "an *administrative or supervisory employee* of a firefighting unit." *N.J.S.A.* 43:16A–1(2)(b) (emphasis added).

fighters or effectively recommending such actions." *N.J.A.C.* 17:4–2.1(d)(1). We find it appropriate to apply those definitions to the identical terms used in *N.J.S.A.* 43:16A–3.1.

The record does not reveal whether the Board considered the above regulatory definitions of "administrative" or "supervisory" duties in determining whether Hemsey performed those functions over police officers or firefighters. To be sure, the evidence that Hemsey performed supervisory or administrative duties over police officers or firefighters is sparse at best. Cipriano's testimony, based on information he claimed to have received from Crosby and Parrish, that those two men believed they were under the command of Hemsey during the absence of their immediate supervisors, was not substantiated by other evidence. Not only was Cipriano unable to recall when Crosby or Parrish relayed that information to him or to describe how Hemsey supervised the two officers, both Parrish and Crosby essentially refuted Cipriano's statement. Parrish testified that he never reported to Hemsey and that Hemsey never supervised him. And, although Crosby believed that Hemsey may have been in his line of supervisors while serving as Director of Communications, he never testified that Hemsey supervised him while serving as a Communications Section consultant.

The Board, however, did not rely on that testimony in reaching its conclusion, but instead looked to the language of Hemsey's consulting contract. The Board focused on the provisions in the contract that authorized Hemsey to "evaluate and work with a group of Trenton City Police and Fire Communication Center personnel" and to be responsible for "operating and training all subordinate employees in the operation of a variety of communications equipment." However, apart from those contractual provisions, there was no evidence to suggest that Hemsey assigned work to any police officers or firefighters, or that he evaluated, disciplined, or trained any police officers or firefighters while serving as a consultant. In fact, the training of employees does not expressly fall within the regulatory definitions of administra-

tive or supervisory responsibilities. Further, the record reveals that, although Hemsey was responsible for training enhancements, particularly computer-based enhancements, he did not train anyone because the Communications Section had its own training officer.

Simply stated, we conclude that there was insufficient credible evidence to support a finding that Hemsey's work as a Communications Section consultant satisfied the requirement of service in an administrative or supervisory capacity over police officers or firefighters. The Legislature intended *N.J.S.A.* 43:16A–3.1 to apply to a limited category of civilian employees, that is, administrators or supervisors who directly oversee either police officers or firefighters. *See Kossup, supra,* 372 *N.J.Super.* at 475–76, 859 *A.*2d 721. Hemsey's position did not satisfy either of those requirements, and therefore it was not PFRS-eligible.

■ Additionally, Hemsey's appointment as civilian Director of Communications on July 12, 1999 was more than six months after his retirement as a police officer. Therefore, that position was not PFRS-eligible because it did not satisfy the statutory mandate that an individual receiving PFRS-benefits must be rehired within six months of retirement to be eligible for re-enrollment. *See N.J.S.A.* 43:16A–3.1. It was error for the Board to cancel Hemsey's PFRS retirement benefits and to require him to re-enroll in PFRS.

IV.

The judgment of the Appellate Division is reversed, and the matter is remanded to the Board for proceedings consistent with this opinion.

*For reversal and Remandment*—Chief Justice RABNER and Justices LONG, LaVECCHIA, ALBIN, WALLACE, RIVERA–SOTO and HOENS—7.

*Opposed*—None.