**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0809-23

LOBO ANDREWS,

     Petitioner-Appellant,

v.

BOARD OF TRUSTEES,
PUBLIC EMPLOYEES'
RETIREMENT SYSTEM,

     Respondent-Respondent.

_____

Argued November 14, 2024 – Decided January 10, 2025

Before Judges Marczyk and Paganelli.

On appeal from the Board of Trustees of the Public Employees' Retirement System, Department of the Treasury, PERS No. xx7801.

Samuel M. Gaylord argued the cause for appellant (Szaferman Lakind Blumstein & Blader, attorneys; Samuel M. Gaylord, on the brief).

Jakai Jackson, Deputy Attorney General, argued the cause for respondent (Matthew J. Platkin, Attorney General, attorney; Sookie Bae-Park, Assistant Attorney General, of counsel; Jakai Jackson, on the brief).

PER CURIAM

Petitioner Lobo Andrews appeals from the October 19, 2023 Board of Trustees (Board) of the Public Employees' Retirement System's (PERS) denial of his application for accidental disability retirement benefits. Petitioner contends the injury to his left shoulder occurred when he was restraining a violent patient at the Ann Klein Forensic Center (AKFC) and constituted an "undesigned and unexpected" event entitling him to an accidental disability pension. The Board denied petitioner's claim, finding the injury was not undesigned and unexpected. Following our review of the record and the applicable legal principles, we reverse.

I.

We derive the following facts from petitioner's testimony and other evidence presented at the hearing before the Administrative Law Judge (ALJ). Petitioner testified he worked for AKFC, "a facility for the criminally insane," as a Senior Medical Security Officer for fifteen years, prior to ending his employment following the incident. He noted a typical work day would include "mak[ing] a count," "do[ing] medication[,] and tak[ing his patients] to rehabilitation throughout the day" while "spend[ing] . . . a lot of time . . . on the unit itself."

A-0809-23

On February 23, 2017, petitioner testified a "stat call" came in over the loudspeaker for a "patient that was out of control."  He ran to the incident and "tr[ied] to get the patient down and into a net restraint" with other officers, which involved "get[ting the patient's] arms inside the holes [of the net] and strap[ping] the net on top of the patient [and] onto the bed" "[t]o keep [the patient] from harming themselves."

Petitioner had prior experience with these calls, and it was part of his responsibilities to respond.  However, he explained this call was different because the patient was "extremely combative."  Petitioner recounted the patient "kicking," "biting," "throwing punches and fighting."  He characterized the altercation as "like a . . . wrestling match."  He recalled the incident lasting fifteen to twenty minutes and "definitely" longer than normal.  Petitioner "attempt[ed] to keep the patient's legs down" while the other officers attempted to restrain the patient.  During the incident, petitioner sustained "several strong kicks and knees" "into the shoulder."

After injuring his shoulder, petitioner indicated he followed AKFC's procedures by completing an incident report before he sought medical attention.  Petitioner testified he reported to a nurse and supervisor on the scene and eventually was transported to the hospital.  Petitioner underwent surgery to his

3

shoulder and did not return to his employment at AKFC. He received workers' compensation benefits.

Petitioner stated he gave the Board's doctor a history of his injury that matched "[his] description of accidental disability" "provided in the [original] incident report[s]." Lastly, petitioner agreed that "the sort of uniqueness of this particular incident [was] . . . the extended period of time and the tenacity at which the patient was fighting, [which] . . . [made] this different than other incidents that [he had] responded to."

On cross-examination, petitioner acknowledged he had completed incident reports in the past but never had to modify one based on information becoming available post-incident. He conceded he had restrained more than 100 patients in the past and that "every time [he] responded to a call, the patient would be in different stages of agitation," with some patients being harder than others to get into a restraint.

Petitioner was then asked to review the original incident reports prepared around the time of the incident. The first report, dated February 23, 2017, read: "While in process of restraining a patient and putting them in the net restraint, [petitioner] hurt [his] left shoulder." He admitted to informing Hamilton Physical Therapy Services on March 1, 2017, where he received treatment post-

injury, that while he "restrain[ed] a [patient, he] sustained an impact injury to [his] left shoulder." Petitioner also testified regarding his visits with Princeton Orthopedics Associates, where a doctor's report noted petitioner "injured [his] shoulder while restraining a patient." Confronted with further medical reports, petitioner noted the reports showed the same general description of his injury to his left shoulder.

In his "Application for Disability Retirement," petitioner characterized the incident as an "assault." He acknowledged he never used that word before to describe the incident. Petitioner testified the discrepancy occurred because "[he] was in a lot of pain and [he] just needed to get some medical treatment" at the time he completed the incident report. He further explained there was no difference in being injured while getting assaulted by a patient as opposed to being injured while restraining a patient. He testified "it's all tied in together" in this situation.

Petitioner subsequently applied for accidental disability retirement benefits. The Board denied the application, concluding the accident did not meet the undesigned and unexpected requirement.[1] Petitioner appealed, and the

---

[1] The Board determined petitioner was permanently disabled from a rotator cuff injury and labrum tear and awarded him ordinary disability retirement benefits.

A-0809-23

matter was transferred to the Office of Administrative Law for a hearing before an ALJ.

The ALJ determined petitioner "displayed a subjective recollection of the [i]ncident, and his testimony essentially confirmed the facts as laid out by respondent." The ALJ noted petitioner's testimony that the patient was "extremely combative and thrashing about." However, the ALJ indicated "nobody referred to the [i]ncident as an 'assault,' including petitioner, until he submitted his version of the [i]ncident when filing his [accidental disability] application." The ALJ found the other reports solely mentioned an injury and "failed to describe an assault." Moreover, he noted petitioner "testified that the patient was kicking at all the personnel and that he had not been a targeted victim of a specific attack."

The ALJ concluded "[t]he injury to petitioner's left shoulder was the result of petitioner performing his regular duties in a normal fashion," that "[r]estraining patients was part of [petitioner's] regular job duties," that "[petitioner] had dealt with restraining unruly patients more than one hundred times," and that "[r]estraining unruly patients was so typical an occurrence that the facility had established policies for such situations." The ALJ ultimately denied the application for accidental benefits holding the incident "cannot be

A-0809-23

considered undesigned or unexpected" because it was part of petitioner's usual job duties.

On October 19, 2023, the Board adopted the ALJ's decision. Thereafter, petitioner appealed.

II.

Petitioner argues the Board improperly determined that he is not entitled to an accidental disability pension because the incident causing his disability was undesigned and unexpected.

We are cognizant that appellate review of an administrative agency's final determination is limited. Russo v. Bd. of Trs., Police & Firemen's Ret. Sys., 206 N.J. 14, 27 (2011). Our courts generally "recognize that agencies have 'expertise and superior knowledge . . . in their specialized fields.'" Hemsey v. Bd. of Trs., Police & Firemen's Ret. Sys., 198 N.J. 215, 223 (2009) (alteration in original) (quoting In re License Issued to Zahl, 186 N.J. 341, 353 (2006)).

"[A]n appellate court ordinarily should not disturb an administrative agency's determinations or findings unless there was a clear showing that[:] (1) the agency did not follow the law; (2) the decision was arbitrary, capricious, or unreasonable; or (3) the decision was not supported by substantial evidence." In re Virtua-W. Jersey Hosp. Voorhees for a Certificate of Need, 194 N.J. 413, 422

A-0809-23

(2008). "The burden of demonstrating that the agency's action was arbitrary, capricious[,] or unreasonable rests upon the person challenging the administrative action." In re Arenas, 385 N.J. Super. 440, 443-44 (App. Div. 2006).

Even so, "in reviewing agency actions, an appellate court is 'in no way bound by the agency's interpretation of a statute or its determination of a strictly legal issue.'" Hemsey, 198 N.J. at 224 (quoting In re Carter, 191 N.J. 474, 483 (2007)). "While we must defer to the agency's expertise, we need not surrender to it." N.J. Chapter of Nat'l. Ass'n of Indus. & Off. Parks v. N.J. Dep't of Env't Prot., 241 N.J. Super. 145, 165 (App. Div. 1990). We do not automatically accept an agency's interpretation of a statute or a regulation, and we review strictly legal questions de novo. Bowser v. Bd. of Trs., Police & Firemen's Ret. Sys., 455 N.J. Super. 165, 170-71 (App. Div. 2018).

Petitioner contends "the Board erred in applying an unduly restrictive notion of an 'undesigned and unexpected' event to [petitioner]'s . . . incident[,] misconstruing Richardson[2] and reaching a decision at odds with the legislative intent in adopting the 'traumatic event' standard." He asserts the Legislature did not intend "to make it generally more difficult for injured employees to obtain

_____

[2] Richardson v. Bd. of Trs., Police & Firemen's Ret. Sys., 192 N.J. 189 (2007).

an accidental disability pension[;]" instead, it "intended to weed out disabilities stemming from a member's pre-existing medical condition, even if the condition was exacerbated by a work incident."

Moreover, petitioner argues "the fact that a member is injured while performing his ordinary duties does not disqualify him from receiving accidental disability benefits; some injuries sustained during ordinary work effort will pass muster and others will not." He contends the key inquiry is whether during the regular performance of his job an unexpected happening—not the result of a pre-existing injury or disease—occurred and resulted in the permanent and total disability. He maintains this case "mirrors" Moran v. Board of Trustees, Police & Firemen's Retirement System, 438 N.J. Super. 346 (App. Div. 2014), "in that despite being trained and having restrained patients in the past[,] this incident was unique due to the nature of the patient and the assault" because petitioner "never had a patient who was this combative."

The Board counters there is sufficient evidence in the record "to support the Board's decision that [petitioner] failed to show that his injury was the result of a traumatic event" where the ALJ "found[] none of the [patient's] kicks were targeted at [petitioner]; rather[,] [petitioner] was struck in the shoulder while the patient was flailing about . . . ." The incident cannot be described as "undesigned

and unexpected" because petitioner's injury occurred while he performed "his regular duties in a normal fashion."

The Board argues petitioner's testimony confirmed that "restraining unruly patients was part of his regular job duties, that he had restrained patients hundreds of times . . . and that nobody referred to the incident as an 'assault,' including [petitioner], until he submitted his disability application." It argues petitioner's claims differ from the examples provided by the Court in Richardson because, while "the Court found them to be examples of accidents that could occur during ordinary work efforts and would qualify for accidental disability retirement benefits," here "[petitioner] was aware of the ongoing risk of being hit inadvertently during his attempt to restrain the patient's legs."

N.J.S.A. 43:15A-43(a) provides accidental disability retirement benefits may be obtained "if [an] employee is permanently and totally disabled as a direct result of a traumatic event occurring during and as a result of the performance of his regular or assigned duties." Our Supreme Court in Richardson clarified the phrase "result of a traumatic event" applicable to N.J.S.A. 43:15A-43(a) by providing a list of five elements a claimant seeking accidental disability retirement benefits must satisfy. 192 N.J. at 212-13. The list includes:

> 1.    that [the member] is permanently and totally disabled;

A-0809-23

2. as a direct result of a traumatic event that is

    a. identifiable as to time and place,

    b. undesigned and unexpected, and

    c. caused by a circumstance external to the member (not the result of pre-existing disease that is aggravated or accelerated by the work);

3. that the traumatic event occurred during and as a result of the member's regular or assigned duties;

4. that the disability was not the result of the member's willful negligence; and

5. that the member is mentally or physically incapacitated from performing his usual or any other duty.

[Ibid.]

"Thus, a member who is injured as a direct result of an identifiable, unanticipated mishap has satisfied the traumatic event standard." Id. at 213.

In Richardson, the petitioner, a corrections officer, was injured while attempting to subdue an inmate. Id. at 214. He was knocked back during the incident causing him to "fall . . . onto his left hand and hyper-extend his wrist." Id. at 193. The petitioner filed for accidental disability retirement benefits, and the Board denied the application because it determined "[the petitioner] did not

11

suffer a traumatic event as required by the statute." Id. at 194. Similarly, "the ALJ determined that the January incident did not constitute a traumatic event[] because [the petitioner]'s response was part of the ordinary duties of a corrections officer." Ibid. "The Board adopted that decision," and "the Appellate Division affirmed, adding that, in its view, [the petitioner]'s injury also did not satisfy the great-rush-of-force prong of the traumatic event standard." Ibid.

The Supreme Court reversed, concluding the Board "misread[]" the statute in determining that "subduing an inmate is part of the anticipated work of a corrections officer and was not unexpected or unintended." Id. at 213. Instead, the Court stressed the statute's requirement that the traumatic event "occur 'during and as a result of the performance of [the member's] regular or assigned duties.'" Ibid. (alteration and emphasis in original). That is, a traumatic event under the statute can occur during ordinary work effort, and the Court identified the following examples: "A policeman can be shot while pursuing a suspect; a librarian can be hit by a falling bookshelf while re-shelving books; a social worker can catch her hand in the car door while transporting a child to court. Each of those examples is . . . undesigned and unexpected" and "[t]hus, each

meets the traumatic event standard."[3] Id. at 214. The Court in Richardson noted the "polestar" of the inquiry as being "whether, during the regular performance of [the petitioner's] job, an unexpected happening, not the result of pre-existing disease alone or in combination with the work, has occurred and directly resulted in the permanent and total disability of the member." Ibid. As discussed below, the facts here are not materially different from Richardson.

Our case law has instructed that a member "who experiences a horrific event which falls within his [or her] job description and for which he [or she] has been trained will be unlikely to pass the 'undesigned and unexpected' test." Russo, 206 N.J. at 33. Nonetheless,

> Russo should not be construed to mean that the inquiry regarding whether an event is "undesigned and unexpected" is resolved merely by reviewing the member's job description and the scope of his or her training. In a given case, those considerations may

---

[3] The Court discussed other situations to provide guidance. For example, "a police officer who has a heart attack while chasing a suspect has not experienced a traumatic event" where "work effort, alone in combination with pre-existing disease, was the cause of the injury." Id. at 213. Whereas "the same police officer, permanently and totally disabled during the chase because of a fall[] has suffered a traumatic event." Ibid. Likewise, "the gym teacher who develops arthritis from the repetitive effects of his work over the years has not suffered a traumatic event" as "[h]is disability is the result of degenerative disease and is not related to an event that is identifiable as to time and place." Ibid. "On the contrary, the same gym teacher who trips over a riser and is injured has satisfied the standard." Ibid.

13                                                                    A-0809-23

weigh strongly for or against an award of accidental disability benefits. To properly apply the Richardson standard, however, the Board and a reviewing court must carefully consider not only the member's job responsibilities and training, but all aspects of the event itself. No single factor governs the analysis.

[Mount v. Bd. of Trs., Police and Firemen's Ret. Sys., 233 N.J. 402, 427 (2018) (emphasis added).]

Applying these principles, we determine the Board erred in adopting the ALJ's initial decision denying petitioner's application for accidental disability retirement benefits. The ALJ took issue with petitioner's characterization of the incident as an "assault" in his application for disability retirement, when he had previously noted in the incident report that he "hurt [his] left shoulder" attempting to restrain a patient. It appears this largely formed the basis for the denial of petitioner's application. However, petitioner's testimony was unrefuted, and the ALJ does not suggest his description of the altercation was inaccurate.

Whether petitioner initially characterized the altercation as an assault is not germane, as the ALJ accepted the testimony that the patient petitioner was attempting to restrain was combative. Whether described as an assault or being forcefully kicked while attempting to restrain a patient, petitioner's version of the incident was analogous to the facts in Richardson. Moreover, the ALJ noted

that petitioner "testified that the patient was kicking at all the personnel and that he had not been a targeted victim of a specific attack." That petitioner had not been a specific target of an attack does not mean the incident was not "undesigned and unexpected."

We conclude the facts here are closely aligned with the facts in Richardson, where the Supreme Court granted accidental disability benefits to a corrections officer injured while attempting to handcuff a violent individual in the course of his duties. 192 N.J. at 214-15. Petitioner here was likewise attempting to restrain a combative patient during a fifteen-to-twenty-minute struggle while being repeatedly kicked in the shoulder. The "uniqueness" of this altercation for petitioner stemmed from the "extended period of time" needed to restrain the patient and the "tenacity" with which the patient was fighting.

Because the Board erred in its application of the law to the factual circumstances presented here, we reverse the Board's decision and remand for the Board to grant petitioner's application and award petitioner accidental disability retirement benefits.

Reversed and remanded for proceedings in accordance with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION