**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2022-16T1

J.L., on behalf of minor child, A.L.,

    Petitioner-Appellant,

v.

BOARD OF EDUCATION OF THE
BRIDGEWATER-RARITAN REGIONAL
SCHOOL DISTRICT, SOMERSET
COUNTY,

    Respondent-Respondent.

_____

Argued September 18, 2018 – Decided October 16, 2018

Before Judges Ostrer, Currier, and Mayer.

On appeal from the New Jersey Commissioner of Education, Docket No. 167-7/15.

Randall J. Peach argued the cause for appellant (Law Offices of Bruce C. LiCausi, attorneys; Bruce C. LiCausi and Randall J. Peach, on the briefs).

Stephen M. Bacigalupo, II argued the cause for respondent Board of Education of the Bridgewater-Raritan Regional School District (Weiner Law Group, LLP, attorneys; Stephen M. Bacigalupo, II, of counsel

and on the brief; John A. Boppert and Aimee S. Weiner, on the brief).

Gurbir S. Grewal, Attorney General, attorney for respondent Commissioner of Education (Eric L. Apar, Deputy Attorney General, on the statement in lieu of brief).

PER CURIAM

Petitioner J.L., on behalf of his minor daughter A.L. (Anna L.),[1] appeals from a December 9, 2016 decision of the Acting Commissioner of Education (Commissioner), which modified the Initial Decision of the Administrative Law Judge (ALJ), and directed respondent Board of Education of the Bridgewater-Raritan Regional School District (Board) to conduct a hearing to determine whether Anna L. committed an act of harassment, intimidation, or bullying (HIB) in violation of the Anti-Bullying Bill of Rights Act (Act), N.J.S.A. 18A:37-13.1 to -32.

The background for the HIB charge against Anna L. is straightforward. In 2015, C.D. (Carl), the father of an elementary school student in the district, E.D. (Ella), sent an email to his child's elementary school's principal advising

_____

[1] We use initials and pseudonyms to protect the privacy interests of the parties and the minor children.

that Ella had been bullied on the school bus for several months. Carl explained students in the same grade as Ella committed the bullying.[2] According to Carl, initially only M.M. (Marcy) and A.M. (Anna M.) made fun of Ella, but "a few more girls . . . joined in." Carl informed the principal he spoke to Anna M.'s parents about the situation, but the bullying continued.

In response to Carl's email, the principal instructed the school's counselor and anti-bullying specialist (ABS) to investigate. The ABS met with Ella to discuss the situation. Ella told the ABS several students on the bus called her "corn-pie" and "walnut," and mocked her inability to pronounce the "sh" sound. Ella explained to the ABS that Marcy, Anna M. and another student, E.G. (Erica), made fun of her. Ella clarified, "there [were] two [Annas] making fun of me, [Anna] M. and [Anna] L." The ABS asked which Anna called Ella names. Ella responded "mostly" Anna M., and Anna L. was "not really" involved.

The ABS then spoke to Erica. She said Marcy, Anna M., and Anna L. talked about "how [Ella] has trouble saying some words." Erica admitted she made fun of Ella's speech once or twice.

---

[2] At the time, the students were seven years old.

A-2022-16T1

Anna M. also spoke to the ABS. According to Anna M., Marcy made fun of Ella and other students on the bus, including herself. Anna M. stated Anna L. said "something not making fun of [Ella]. She was talking about [Ella's] voice because [Ella] has a weird accent." Anna M. said Anna L. "pretend[ed] to be [Ella] and cr[ied] or something."

The ABS met with Marcy. Marcy said she, Anna M., and Erica were "bullying" Ella, but that Ella bullies them. Marcy admitted to name-calling Ella. Marcy stated Anna L. did not really participate in the name-calling.

The ABS spoke with Anna L. She told the ABS, "[Ella] has a speech problem and the girls were making fun of her and since they were doing it and I was bored, I did it also, I made fun of her speech." Anna L. explained she made fun of Ella only "one time."

The ABS wrote a report detailing her investigation and findings. In her report, the ABS stated "[a]ll students named as aggressors . . . admitted to their behavior," and the "behavior . . . is HIB." The report was forwarded to the school principal and the superintendent of the school district. Both administrators signed the report the same day each received the document.

The action section of the ABS's report noted the involved students were issued a "[v]erbal reprimand," their parents were "[t]elephoned" and a "[c]hange of bus seating" was initiated in response to the HIB complaint.

Anna L.'s parents wrote to the superintendent. They explained they were aware of an HIB investigation, but no one had contacted them. Anna L.'s parents opined their daughter's comments were an isolated incident, and the children had apologized to each other. Anna L.'s parents asked the superintendent to consider their daughter's age, general demeanor, and her apology to Ella before making a final determination.

The Board previously appointed an HIB Committee to address the district's HIB issues. The ABS shared "the results of the HIB investigation" with the HIB Committee. The record does not reflect whether the ABS sent a copy of her report to the HIB Committee, or simply told the committee about her findings. After receipt of the information from the ABS, the HIB Committee created a confidential "HIB Committee Report." The HIB Committee Report was a spreadsheet containing the HIB investigations; identifying the name and grade of the alleged victim(s) and aggressor(s); the nature of the complaint; the investigator's conclusion; the actions taken; and the HIB Committee's recommendation. The HIB Committee Report lacked any narrative related to

5

the HIB complaints. The HIB Committee recommended affirming the ABS's findings without any further statement of reasons.

The HIB Committee Report was sent to the Board for consideration at the next Board meeting. The ABS's report was not provided to the Board.

At its next meeting, the Board considered "[a]pproval of the [s]uperintendent's report of alleged HIB incidents and investigations for March 19, 2015, as well as the recommendation of the Board's HIB Committee to affirm the determinations and actions specified." Anna L.'s parents were not notified the Board would be voting on Anna L.'s HIB determination at the meeting. The Board unanimously affirmed the recommendations contained in the HIB Committee Report.

After the Board voted, Ella's parents received notice of the HIB investigation and the Board's decision. Ella's parents then sent an email to the school's principal and the HIB Committee, clarifying their "intention was to have the children educated rather than punished." Ella's parents explained, "[w]e also believe that children of this age are still learning. Explaining and showing them the right way to interact would be more beneficial [than] . . . permanently labeling them [as bullies]." The school principal asked if Ella's

parents were "requesting an appeal of the conclusion of the investigation." Ella's parents replied, "we would prefer that the incident not . . . be classified as HIB."

The principal wrote to Anna L.'s parents regarding the HIB allegation against their daughter, and reported the Board's decision. The principal advised Anna L.'s parents of their right to appeal the Board's decision. Anna L.'s parents did not receive a copy of the ABS's report or the HIB Committee Report.[3] Anna L.'s father responded to the principal's letter, indicating he believed the HIB findings were erroneous, and advised he would be retaining legal counsel to address the matter.

J.L. retained counsel, who contacted the Board, advising its action was contrary to the Act. Counsel opined the school district's failure to comply with the Act rendered the Board's action against Anna L. invalid. J.L.'s counsel contended there was no basis for the school district to have a "second opportunity to properly follow the procedures mandated by the Act" and therefore Anna L.'s parents would not pursue an appeal to the school's superintendent.

---

[3] Anna L.'s parents first received a copy of these reports two months after the Board's vote.

A-2022-16T1

With the ninety-day deadline within which to pursue an appeal of the Board's decision approaching, J.L. appealed to the Commissioner. In that appeal, Anna L.'s parents argued the Board violated the Act, infringed on Anna L.'s right to due process, and Anna L.'s behavior did not constitute HIB.

The matter was deemed contested, referred to the Office of Administrative Law, and an Administrative Law Judge (ALJ) was assigned. Counsel for J.L. filed a motion for summary judgment, and the Board filed opposition. The ALJ rendered a decision in favor of Anna L., finding the Board violated the Act. Specifically, the ALJ found the Board failed to issue a decision in writing regarding the HIB determination, contrary to N.J.S.A. 18A:37-15(b)(6)(e), and failed to notify Anna L.'s parents of the investigation results, contrary to N.J.S.A. 18A:37-15(b)(6)(d). While he found the Board violated the Act, the ALJ declined to make a substantive determination as to whether Anna L.'s conduct constituted an act of HIB.

In considering the appropriate remedy for the Board's violations of the Act, the ALJ concluded remanding the matter for a Board hearing would be unfairly prejudicial to Anna L. due to the passage of time since the events. The ALJ determined the only viable remedy for the Board's procedural violations of

the Act was reversal of the HIB determination, and expungement of any reference to the incident from Anna L.'s school records.

The Board filed exceptions to the ALJ's decision, and the matter was presented to the Commissioner for review. While agreeing with the ALJ's conclusion that the Board violated the procedural requirements of the Act, the Commissioner disagreed with the ALJ's remedy. The Commissioner found the Board conducted a timely and thorough investigation, but failed to notify the student and her parents of their right to a hearing and failed to issue a written decision. Based on this finding, the Commissioner remanded the matter to the Board to "provide petitioner with a hearing and issue a proper decision."

Anna L.'s parents appealed. On appeal, J.L. argues the following: the Commissioner erred in remanding the matter to the Board for a hearing; the ALJ and Commissioner erred in denying summary judgment in favor of Anna L. on the merits of the HIB determination; the Commissioner failed to determine the Board violated other provisions of the Act; the Commissioner erred in finding Anna L.'s parents were adequately informed of the HIB investigation; and the Act is unconstitutional as applied to Anna L.[4]

---

[4] The last issue was not presented to the ALJ or the Commissioner. "[A]ppellate courts will decline to consider questions or issues not properly presented to the

Our review of an agency's final determination is limited. In re Carter, 191 N.J. 474, 482 (2007). We will uphold a decision absent "a clear showing that it is arbitrary, capricious, or unreasonable, or that it lacks fair support in the record." Hemsey v. Bd. of Trs., Police & Firemen Ret. Sys., 198 N.J. 215, 223–24 (2009) (quoting In re Herrmann, 192 N.J. 19, 27–28 (2007)). Accordingly, "our scope of review is guided by three major inquiries: (1) whether the agency's decision conforms with relevant law; (2) whether the decision is supported by substantial credible evidence in the record; and (3) whether, in applying the law to the facts, the administrative agency clearly erred in reaching its conclusion." Twp. Pharmacy v. Div. of Med. Assistance & Health Servs., 432 N.J. Super. 273, 283-84 (App. Div. 2013) (citing In re Stallworth, 208 N.J. 182, 194 (2011)).

We "defer to an agency's interpretation of . . . [a] regulation, within the sphere of [its] authority, unless the interpretation is 'plainly unreasonable.'" U.S. Bank, N.A. v. Hough, 210 N.J. 187, 200 (2012) (alterations in original) (quoting In re Election Law Enf't Comm'n Advisory Op. No. 01-2008, 201 N.J. 254, 262

---

trial court when an opportunity for such a presentation is available unless the questions so raised on appeal go to the jurisdiction of the trial court or concern matters of great public importance." Nieder v. Royal Indemnity Ins. Co., 62 N.J. 229, 234 (1973) (internal citation omitted). Because the question does not relate to jurisdiction, and challenges the constitutionality of the Act as applied to Anna L. only, we decline to reach this issue on appeal.

(2010)).  However, we are "in no way bound by [an] agency's interpretation of a statute or its determination of a strictly legal issue."  In re Taylor, 158 N.J. 644, 658 (1999) (quoting Mayflower Sec. Co. v. Bureau of Sec., 64 N.J. 85, 93 (1973)).

"The Commissioner of Education is granted authority to implement [the Act]."  L.W. ex rel. L.G. v. Toms River Reg'l Sch. Bd. of Educ., 381 N.J. Super. 465, 498 (App. Div. 2005).  An "agency's interpretation will prevail provided it is not plainly unreasonable."  Merin v. Maglaki, 126 N.J. 430, 437 (1992).

The stated purpose of the Act is to promote "a safe and civil environment in school" by preventing "conduct that disrupts both a student's ability to learn and a school's ability to educate its students in a safe environment[.]"  N.J.S.A. 18A:37-13.  The Act was promulgated "to strengthen the standards and procedures for preventing, reporting, investigating, and responding to incidents of [HIB] of students that occur in school and off school premises[.]"  N.J.S.A. 18A:37-13.1(f).  All school districts are required to adopt policies that outline procedures for reporting and investigating complaints of HIB.  N.J.S.A. 18A:37-15(a).

The Act expressly requires parents be provided information about an HIB investigation and permitted a hearing before the local board of education.

N.J.S.A. 18A:37-15(b)(6)(d). The Act also requires the local board of education issue a written decision, and permits parents to appeal that decision to the Commissioner. N.J.S.A. 18A:37-15(b)(6)(e).

It is undisputed the Board failed to comply with these requirements. Anna L.'s parents were not provided information about the HIB investigation until after the Board voted. Indeed, Anna L.'s parents only received the written report of the HIB incident two months after the Board took action. No one disputes the Board's non-compliance with the Act's requirements. The issue is whether the Commissioner correctly remanded the matter to the Board for a proper hearing regarding the HIB allegations against Anna L.

We are satisfied the Commissioner's decision to remand the matter to the Board for a full and proper hearing to assess whether Anna L. committed an act of HIB is consistent with the Act's legislative intent and is not arbitrary, capricious, or unreasonable. J.L. disagrees with the Commissioner's decision to remand the matter to the Board, contending that a fair hearing cannot be provided because too much time has passed, and memories have faded. However, the ABS made a record of the children's statements. Although one may reasonably disagree with the Commissioner's decision, it was not arbitrary, capricious, or unreasonable. Therefore, we concur that a remand proceeding

12

will satisfy the Act's requirements and implement the procedural safeguards contemplated by the Legislature's adoption of the Act.

Prior to the remand hearing, the Board shall provide petitioner with the full record of the HIB allegations against Anna L., including the underlying investigative report, any additional written reports or summaries, and the letter from Ella's parents to the superintendent. Only upon receipt of a complete record can the Board satisfy the requirements of N.J.S.A. 18A:37-15(b)(6)(a) to -15(b)(6)(f).

Because we are satisfied that a remand to the Board to develop a complete and thorough record is the proper remedy in this case, we need not address petitioner's other arguments.

Reversed and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2022-16T1