NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1182-16T2

PAUL MATTIA,

    Petitioner-Appellant,

v.

BOARD OF TRUSTEES, POLICE AND
FIREMEN'S RETIREMENT SYSTEM,

    Respondent-Respondent.

_____

| APPROVED FOR PUBLICATION |
| :---: |
| June 13, 2018 |
| APPELLATE DIVISION |

Argued telephonically May 4, 2018 —
Decided June 13, 2018

Before Judges Sabatino, Ostrer and Rose.

On appeal from the Board of Trustees of the
Police and Firemen's Retirement System,
Department of Treasury, PFRS No. 03-10-051127.

Brooke E, Bagley argued the cause for
appellant (Ricci, Fava & Bagley, LLC,
attorneys; Ronald J. Ricci, of counsel; Brooke
E. Bagley, on the brief).

Robert E. Kelly, Deputy Attorney General,
argued the cause for respondent (Gurbir S.
Grewal, Attorney General, attorney; Melissa
Dutton Schaffer, Assistant Attorney General,
of counsel; Christina Cella, Deputy Attorney
General, on the brief).

    The opinion of the court was delivered by

ROSE, J.S.C. (temporarily assigned).

Petitioner Paul Mattia appeals from a final determination of the Board of Trustees ("Board") of the Police and Firemen's Retirement System ("PFRS"), finding he was not eligible for accidental disability retirement benefits, pursuant to N.J.S.A. 43:16A-7. Mattia suffered a disabling injury when he slipped and fell on ice in the parking lot of the jail where he was employed, before he was able to check in and receive his assignment. Because Mattia had not yet begun performing his regular assigned duties, the Board denied his claim for accidental disability retirement benefits, determining he was still commuting when he was injured. In doing so, the Board rejected the decision of an Administrative Law Judge ("ALJ") granting Mattia's petition. We affirm, finding Mattia was still commuting when he was injured in the parking lot.

The facts are essentially undisputed, and are summarized in the initial decision by the ALJ as follows:

> At 7:50 a.m. on the morning of February 19, 2014, Paul Mattia was a Senior Correction Officer, whose regular assignment was as a Gate Officer, employed by the New Jersey Department of Corrections at Northern (Rahway) State Prison.[1] Mattia drove to work, parked his car in the employee parking lot, exited the car, and walked in the parking lot

---

[1] In his answers to interrogatories, submitted to the ALJ and contained in the record on appeal, Mattia stated he previously worked at both Northern State Prison and Rahway Prison, but was working at the Adult Diagnostic and Treatment Center in Avenel at the time of the incident.

directly towards the entrance portal of the prison building where his post was located. He was reporting for his shift, which was to start at 8:00 a.m. and continue to 4:00 p.m. There was ice in the parking lot. While walking, Mattia stepped into an icy pothole and fell down, sustaining various injuries. These injuries are the subject of the Board's July 13, 201[5] determination [that Mattia is totally and permanently disabled]. Two photographs . . . show that the location of the accident was adjacent to parked cars and the prison building at which Mattia worked. The photographs depict the distance of the accident location from the parked cars, from the prison building, and from the portal towards which Mattia was walking when the accident occurred.[2]

The sole issue presented to the ALJ was "whether [Mattia's] disability resulted from an injury which he sustained 'during and as a result of the performance of his regular or assigned duties.'" See N.J.S.A. 43:15A-43; Richardson v. Bd. of Trs., 192 N.J. 189, 212-13 (2007). Both parties moved for summary disposition and presented documentary evidence at the hearing, but no witnesses testified.

Among other documents, the Board submitted for the ALJ's consideration a "Supervisor's Accident Investigation Report," listing Mattia's job duties as: "Watching [r]esidents; pat

---

[2] Both photographs are contained in the record on appeal, but the prison building and "portal" are not clearly depicted. Also, the distances referenced generally by the ALJ are not numerically measured on the photographs or specified elsewhere in the record.

frisking [r]esidents; [w]alking [a]round work [a]rea; [r]esponding to incidents."  The Board also submitted a document entitled, "Physical Demands Analysis," dated January 8, 2015, indicating Mattia was "exposed to . . . environmental conditions (temp[erature], hazards, etc.) . . . outside when walking between compounds."

Mattia submitted his answers to interrogatories with attachments for the ALJ's review.  He defined his job duties as including "security of the gate, entry into the facility, inmate transfers to and from facility, inmate supervision as well as tasks/orders directed by supervising officers."  He also referenced and included a three-page document entitled "Job Specification," defining the position of a Senior Correction Officer, and setting forth "examples of work for this title . . . for illustrative purposes only."  Two of the eighteen examples listed for the Job Specification are set forth as follows:

> Conducts periodic inspections of the locks, windows, bars and grills, doors and gates, and other places of possible egress . . . .
>
> Notes suspicious persons and conditions and takes appropriate measures in reporting significant actions, and occurrences in the buildings and on the grounds; reports conditions constituting dangers and hazards; and takes the necessary steps to assure safe and orderly conditions.

The ALJ found Mattia's documents "speak for themselves." Relying on the examples cited by Mattia, the ALJ determined Mattia's application for accidental disability retirement should be granted. The ALJ reasoned:

> It is apparent that Mattia's employer called upon him to exercise vigilance inside and outside the prison at any time and any place he happened to be present. Obviously, this included the minutes spent before and after his shift began or ended; it included his time inside the building and outside the building. It follows . . . that per his job description, Mattia was performing his duties as soon as he arrived by car on the premises, continued as he alighted from his vehicle to walk to the entrance portal where his post was located, and continued throughout the course of his shift. . . . Mattia's commute ended as soon as his vehicle arrived on his employer's premises, whereupon his regular or assigned duties immediately commenced, even before his shift officially began. . . . [A]s Mattia walked from his parked car to the entrance portal of the building, he was duty-bound to exercise the vigilance set forth in his Job Description and thereby was engaged in conduct that was preliminary but necessary to the performance of his work duties.

After the Board filed exceptions and Mattia filed a reply, the Board determined Mattia was still in the process of commuting at the time of his accident. In its October 18, 2016 final decision, the Board adopted the findings of fact set forth in the ALJ's initial decision, with modification, but rejected the ALJ's conclusion of law that the incident at issue occurred during and

5

as a result of Mattia's assigned duties. In doing so, the Board rejected the ALJ's determination that "Mattia had a duty to perform work tasks on the way into his employer's building and was actually performing said tasks when he was injured." This appeal followed.

The standard of review that applies in an appeal from a state agency decision is well established. "Judicial review of an agency's final decision is generally limited to a determination of whether the decision is arbitrary, capricious, or unreasonable or lacks fair support in the record." Caminiti v. Bd. of Trs., 431 N.J. Super. 1, 14 (App. Div. 2013) (citing Hemsey v. Bd. of Trs., Police & Firemen's Ret. Sys., 198 N.J. 215, 223 (2009)). In reviewing an administrative decision, we ordinarily recognize the agency's expertise in its particular field. Ibid. However, we are not bound by an agency's statutory interpretation or other legal determinations. Russo v. Bd. of Trs., Police & Firemen's Ret. Sys., 206 N.J. 14, 27 (2011). Indeed, as we recognized today in Bowser v. Police & Firemen's Retirement System, ___ N.J. Super. ___, ___ (App. Div. 2018) (slip op. at 7), "we owe no deference to an administrative agency's interpretation of judicial precedent."

Pursuant to N.J.S.A. 43:15A-43, a member of PFRS may be retired on an accidental disability pension if the "employee is

permanently and totally disabled as a direct result of a traumatic event occurring during and as a result of the performance of his regular or assigned duties." See also Richardson, 192 N.J. at 213-15 (holding that in order to qualify for such benefits, a member of the retirement system must establish, among other things, that "the traumatic event occurred during and as a result of the member's regular or assigned duties").

Mattia argues that the Board misinterpreted the law in disqualifying him from accidental disability retirement benefits, and Kasper v. Board of Trustees, Teachers' Pension and Annuity Fund, 164 N.J. 564 (2000) compels a different finding by this court. Specifically, Mattia claims his commute was completed when he arrived in the parking lot and was "doing something preparatory to [his] job function like making way to the entrance of [his] job heading to [his] post." We disagree.

In Kasper, the petitioner was an education media specialist, who was assaulted and robbed on the stairway entrance to a school forty-five minutes before the school day began. Id. at 570. Kasper arrived early because she was tasked with distributing media material prior to the official start of classes. Id. at 571. The Court found that since Kasper had "parked her car, crossed the street to the school, and was negotiating the stairs"

of the school when the incident occurred, her commute was completed and she was in the performance of her duties when she was injured. Id. at 588.

In reaching its decision, the Court noted the amendments to the accidental disability statutes, requiring the traumatic event occur "during and as a result of the performance of [the employee's] regularly assigned duties," was "intended to reestablish the integrity of the premises rule and eliminate the judicially created exceptions to the going and coming rule." Id. at 580. In doing so, the Court recognized agency decisions determining that an employee was still commuting when the employee "was not yet engaged in his or her employment duties on property owned or controlled by the employer." Id. at 581-82. For example, the Court cited Lewis-Miles v. Board of Trustees, Public Employees' Retirement System, TYP 8932-96, initial decision, (July 16, 1998), adopted, (Aug. 20, 1998), http://njlaw.rutgers.edu/collections/oal/final/typ8932-96.pdf, (denying accidental disability benefits for an employee who was injured when her car slid on ice and struck another vehicle shortly after she drove through the front gate of her employer's facility), and Estate of Matza v. Board of Trustees, Teachers' Pension and Annuity Fund, 96 N.J.A.R.2d 224, (Div. of Pensions) (denying such

benefits where a teacher slipped and fell on ice when walking across the parking lot to his employer's school).

Therefore, to qualify for accidental disability retirement benefits, an employee cannot merely be coming to, or going from work. Id. at 581. Rather, the employee "must be engaged in his or her employment duties on property owned or controlled by the employer." Id. at 581. In sum, in order to qualify for accidental disability benefits, employees must satisfy the statutory criteria that they were on the work premises and performing a function causally connected to their work. Id. at 588.

We conclude, as did the Board, that Mattia had not yet completed his commute when he was injured, and was not performing any function connected to his work assignment when he was injured.[3] For example, he was not chasing an escapee, but merely walking from his car to the prison entrance, when he slipped and fell on ice in the parking lot.

Moreover, the record before us does not establish what Mattia's particular assignment would have been on the day of the

---

[3] In light of our disposition that Mattia was not engaged in or assigned to perform any work-related activity before the start of his shift, we need not reach, in this appeal, the question of whether the area where he fell in the parking lot can be considered part of his work location.

incident. The Job Specification document relied upon by the ALJ lists examples of work for a "Senior Correction Officer," in general, as evidenced by the notation which precedes the eighteen examples, that they "are for illustrative purposes only." The record is devoid of evidence that any of the examples listed describe Mattia's specific job duties at the time of the incident. Even if Mattia were specifically tasked with the duties generally described in the examples, none of the examples supports the ALJ's finding that Mattia's employer "called upon him to exercise vigilance inside and outside the prison at any time and any place he happened to be present."

Rather, the record before the ALJ and this court reveals that Mattia's specific job duties did not include before-hours vigilance in the parking lot. In particular, the only mention in the record of his "outside" work activities is "walking between compounds." While the record does not establish whether the parking lot is located between compounds, the record does indicate that Mattia had not yet reported to his work assignment when he was injured. Further, the record is devoid of any evidence that Mattia was required to report early to work on the day he was injured, for example, to surveil the parking lot for safety.

Although the Board found Mattia's injury was directly caused by the incident, that finding alone does not satisfy the statutory requirement "the injury occurred during and as a result of the performance of his regular or assigned duties." N.J.S.A. 43:15A-43. Predicated upon the factual scenario presented here, when considered with controlling law, we conclude Mattia's injury was not causally connected to his work. As such, we are in accord with the Board that Mattia's claim does not satisfy the criteria for eligibility for accidental disability retirement benefits.

We, therefore, conclude from our review of the record that the Board's decision was not arbitrary, capricious or unreasonable and was supported by sufficient credible evidence. Accordingly, there is no basis to alter the Board's decision. See In Re Young, 202 N.J. 50, 70 (2010) (upholding an agency decision where "there was substantial credible evidence in the record as a whole to support the agency's findings").

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1182-16T2