**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0048-17T3

DAVID TELOFSKI,

    Petitioner-Appellant,

v.

BOARD OF TRUSTEES,
PUBLIC EMPLOYEES'
RETIREMENT SYSTEM,

    Respondent-Respondent.

Argued October 15, 2018 – Decided November 7, 2018

Before Judges Messano and Rose.

On appeal from the Board of Trustees of the Public Employees' Retirement System, Department of Treasury, PERS No. 2-1153151.

Samuel M. Gaylord argued the cause for appellant (Gaylord Popp, LLC, attorneys; Samuel M. Gaylord, on the brief).

Christopher R. Meyer, Deputy Attorney General, argued the cause for respondent (Gurbir S. Grewal, Attorney General, attorney; Melissa Dutton Schaffer, Assistant Attorney General, of counsel; John A. Lo Forese, Deputy Attorney General, on the brief.)

PER CURIAM

Petitioner David Telofski appeals from a July 21, 2017 final decision of the Board of Trustees (Board) of the Public Employees' Retirement System (PERS), denying his application for accidental disability retirement benefits pursuant to N.J.S.A. 43:15A-43. In doing so, the Board rejected the initial decision of the Administrative Law Judge (ALJ), finding petitioner was not injured during his regular and assigned duties. We affirm.

I.

We glean the pertinent facts and procedural history from the record before the ALJ. Petitioner was employed by the Department of Transportation as an operating engineer. During winter months, petitioner's responsibilities included operation of the central steam plant, including the boilers and the energy management system. Because the boilers needed "constant care and attention," petitioner was required to arrive fifteen minutes before his shift commenced. Routinely, petitioner parked his car in his employer's parking lot near the steam plant, then walked to the engineering building and signed in at the security desk. He would then cross the parking lot to the steam plant to relieve the operator on duty.

A-0048-17T3

On February 28, 2010, petitioner followed the above procedure, arriving fifteen minutes before his scheduled 7:00 a.m. shift. While walking across the parking lot en route to the engineering building, petitioner slipped on black ice and fell backward, injuring his head, neck, and lower back. After the incident, petitioner completed his full shift and went home. Subsequently, petitioner sought treatment for his injuries, but worked until summer 2010.

In December 2011, petitioner applied for accidental disability retirement benefits, claiming he sustained physical injuries as a result of the accident. Thereafter, the Board denied his application. Petitioner appealed, and the matter was transmitted to the Office of Administrative Law as a contested case. A four-day testimonial hearing was held before the ALJ. Petitioner and two doctors testified on his behalf, two doctors testified on behalf of the Board, and various documents were entered in evidence.

In June 2017, the ALJ issued an initial decision, concluding petitioner was (1) totally and permanently disabled from performing his regular and assigned duties, and (2) injured during the course of his regular and assigned duties. Pertinent to this appeal, the ALJ cited our Supreme Court's decision in Kasper v. Board of Trustees of the Teachers' Pension and Annuity Fund, 164 N.J. 564 (2000), and reasoned that like the petitioner in Kasper, petitioner had "started to

A-0048-17T3

fulfill the requirements of his job," when he was injured on his employer's property. In particular, "but-for the signing requirement, which was part and parcel of his job, petitioner would not have been walking across the lot in the other direction from the boiler house, and would never have encountered the ice in that direction."

Following exceptions filed by the Attorney General's Office, the Board rendered a final decision, adopting the ALJ's factual findings and conclusion that petitioner is totally and permanently disabled, and granting petitioner ordinary disability retirement benefits, N.J.S.A. 43:15A-42. However, the Board rejected the ALJ's legal conclusion that petitioner was injured during his regular and assigned duties, and therefore determined that he was not entitled to accidental disability retirement benefits. This appeal followed.

On appeal, petitioner argues the Board misapplied the law and incorrectly concluded he does not qualify for accidental disability retirement benefits. Citing Kasper, and our recent decision in Mattia v. Board of Trustees, Police and Firemen's Retirement System, 455 N.J. Super. 217 (App. Div. 2018),[1]

_____

[1] Mattia was decided after the ALJ's initial decision was issued, and after the present appeal was filed. Pursuant to Rule 2:6-11(d), both parties filed supplemental letter briefs contending Mattia supported their respective positions.

4

petitioner contends the incident occurred in the course of his regular job duties because he was required by his employer to arrive early and sign-in before his shift began.

## II.

"Our [appellate] review of administrative agency action is limited." Russo v. Bd. of Trs., Police & Firemen's Ret. Sys., 206 N.J. 14, 27 (2011).  Reviewing courts presume the validity of the "administrative agency's exercise of its statutorily delegated responsibilities."  Lavezzi v. State, 219 N.J. 163, 171 (2014).  For those reasons, "an appellate court ordinarily should not disturb an administrative agency's determinations or findings unless there is a clear showing that (1) the agency did not follow the law; (2) the decision was arbitrary, capricious, or unreasonable; or (3) the decision was not supported by substantial evidence." In re Virtua-West Jersey Hosp. Voorhees for a Certificate of Need, 194 N.J. 413, 422 (2008).  "The burden of demonstrating that the agency's action was arbitrary, capricious or unreasonable rests upon the [party] challenging the administrative action."  In re Arenas, 385 N.J. Super. 440, 443-44 (App. Div. 2006).

"[T]he test is not whether an appellate court would come to the same conclusion if the original determination was its to make, but rather whether the

A-0048-17T3

factfinder could reasonably so conclude upon the proofs." Brady v. Bd. of Review, 152 N.J. 197, 210 (1997) (internal quotation marks omitted) (quoting Charatan v. Bd. of Review, 200 N.J. Super. 74, 79 (App. Div. 1985)). "Where . . . the determination is founded upon sufficient credible evidence seen from the totality of the record and on that record findings have been made and conclusions reached involving agency expertise, the agency decision should be sustained." Gerba v. Bd. of Trs., Pub. Emps.' Ret. Sys., 83 N.J. 174, 189 (1980).

We are not, however, bound by an agency's statutory interpretation or other legal determinations. Russo, 206 N.J. at 27. "We owe no deference to an administrative agency's interpretation of judicial precedent." Bowser v. Bd. of Trs., Police & Firemen's Ret. Sys., 455 N.J. Super. 165, 171 (App. Div. 2018).

The PERS provides for both ordinary, N.J.S.A. 43:15A-42, and accidental, N.J.S.A. 43:15A-43, disability benefits. "[A]n accidental disability retirement entitles a member to receive a higher level of benefits than those provided under an ordinary disability retirement." Patterson v. Bd. of Trs., State Police Ret. Sys., 194 N.J. 29, 43 (2008).[2] Where, as here, a claimant seeks accidental

---

[2] Although Patterson decided accidental disability benefits under the State Police Retirement System, N.J.S.A. 43:5A-10, the Court noted that accidental benefits are also available under other public retirement systems, including PERS. Patterson, 194 N.J. at 42 n.1; see also Richardson v. Bd. of Trs, Police

disability retirement benefits, he must prove: (1) "[he] is permanently and totally disabled"; (2) "as a direct result of a traumatic event"; (3) "occurring during and as a result of the performance of his regular or assigned duties . . . ." N.J.S.A. 43:15A-43; see also Richardson, 192 N.J. at 212-13.

The Supreme Court has addressed the meaning of "during and as a result of the performance of his regular or assigned duties" in the context of an education media specialist who was mugged on the steps of a school building. Kasper, 164 N.J. at 587. In Kasper, the petitioner regularly arrived forty-five minutes before the start of the school day because the principal required distribution of materials before classes commenced. Id. at 570. On the date of the incident, the petitioner parked her car and proceeded across the street to the school. Id. at 571. While climbing the stairs of the building, the petitioner was assaulted and robbed. Ibid. The Court concluded the incident occurred while she was "engaged in conduct that was, in every sense, preliminary but necessary to her early workday media distribution," and, as such, the petitioner qualified for accidental disability retirement benefits. Id. at 588. The Court explained,

_____

& Firemen's Ret. Sys., 192 N.J. 189, 192 n.1 (2007) (recognizing both pension systems "condition[] the grant of accidental disability benefits on satisfying identical standards . . . .").

The organizing principle is that one who is at the employer's premises solely to do his or her duty, and who, while doing what he or she is expected to do, is disabled by a traumatic accident, will qualify for inclusion in the class of those injured "during and as a result of the performance of his regular or assigned duties."

[Id. at 587.]

Nonetheless, in reaching its decision in Kasper, the Court referenced the amendments to the accidental disability retirement benefits statutes, and determined that the purpose of those amendments "was to make the granting of an accidental disability pension more difficult." Id. at 575-76. The Court explained further that the substitution of the language "during and as a result of the performance of his regularly assigned duties" for the phrase "arising out of and in the course of" was "intended to reestablish the integrity of the premises rule and eliminate the judicially created exceptions to the going and coming rule." Id. at 580. The Court emphasized that commuting injuries do not qualify for accidental retirement benefits. Id. at 585. Thus, "an employee cannot be 'coming or going' to work, but must be engaged in his or her employment duties on property owned or controlled by the employer . . . ." Id. at 581.

Relevant here, the Court in Kasper rejected the Board's conclusion that the petitioner was still commuting at the time of the incident. Id. at 588. "She

had parked her car, crossed the street to the school, and was negotiating the stairs, in an attempt to enter the building, when she was assaulted." Ibid. Conversely, here, petitioner was injured when he slipped and fell on ice in the parking lot before he reached the engineering building to sign in.

The facts of the present case are instead strikingly similar to those of Mattia. In that case, we affirmed a final determination of the Board of Trustees of the Police and Firemen's Retirement System, finding a former corrections officer was not eligible for accidental disability retirement benefits pursuant to N.J.S.A. 43:16A-7. Mattia, 455 N.J. Super. at 219. "Mattia suffered a disabling injury when he slipped and fell on ice in the parking lot of the jail where he was employed, before he was able to check in and receive his assignment." Ibid. Because Mattia had not yet begun performing his regular assigned duties, we agreed with the Board that he was still commuting when he fell in the parking lot. Ibid.

In this case, although petitioner was required to report to work before his shift began, he was not "negotiating the stairs, in an attempt to enter the building" like the petitioner in Kasper. 164 N.J. at 588. Instead, like the petitioner in Mattia, petitioner slipped and fell on ice in his employer's parking

lot after he parked his car, but before he reached the engineering building to check in and report to his assignment in another building.

Further, like the petitioner in <u>Mattia</u>, petitioner was not "required to report early to work on the day he was injured, for example, to surveil the parking lot for safety." 455 N.J. Super. at 224. Petitioner was required to report early so that there was no interruption in monitoring of the boilers and energy management system. Because petitioner had not even reached the engineering building to check in, clearly he had not begun performing his regular assigned duties in the steam plant.

Based on our review of the record, we agree with the Board that petitioner was still commuting when he fell in the parking lot and, as such, he was not injured while performing his regular or assigned duties. Accordingly, we conclude the Board's decision was not arbitrary, capricious or unreasonable, and is supported by sufficient credible evidence in the record. <u>See</u> <u>In Re Young</u>, 202 N.J. 50, 70-71 (2010).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0048-17T3