**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4967-17T4

JAMIELYN ROSSBACH,

    Petitioner-Appellant,

v.

BOARD OF TRUSTEES, POLICE
AND FIREMEN'S RETIREMENT
SYSTEM,

    Respondent-Respondent.

_____

Argued November 12, 2019 – Decided December 9, 2019

Before Judges Sumners and Geiger.

On appeal from the Board of Trustees of the Police and Firemen's Retirement System, Department of the Treasury, PFRS No. 3-87227.

M. Scott Tashjy argued the cause for appellant (The Tashjy Law Firm, LLC, attorneys; M. Scott Tashjy, of counsel and on the briefs).

Christopher Robert Meyer, Deputy Attorney General, argued the cause for respondent (Gurbir S. Grewal, Attorney General, attorney; Melissa H. Raksa,

Assistant Attorney General, of counsel; Christopher Robert Meyer, on the brief).

PER CURIAM

Petitioner Jamielyn Rossbach appeals from the final agency decision of the Board of Trustees (Board), Police and Firemen's Retirement System (PFRS), denying her application for ordinary disability retirement benefits. The Board adopted the initial decision of the Administrative Law Judge (ALJ) affirming the denial of Rossbach's application for ordinary disability retirement benefits.

Rossbach argues for the first time on appeal that, despite being aware she may suffer from a mental disorder, the Board failed to cancel her original application and evaluate her for a "psychological/psychiatric" disability. For the following reasons we affirm.

I.

Rossbach was employed by Monmouth County as a corrections officer from March 1999 to September 30, 2012. In June 2011, Rossbach was hospitalized for what she understood to be viral meningitis and acute disseminated encephalomyelitis (ADEM). Thereafter, Rossbach began seeing multiple physicians for her symptoms—including dizziness, vision impairment, stiff neck, and headaches—but none offered an "opinion as to the cause of all her conditions."

A-4967-17T4

In May 2012, Rossbach submitted a pro se application for ordinary disability retirement benefits pursuant to N.J.S.A. 43:16A-6. Rossbach described her disability as, "acute disseminated encephalomyelitis, disorientation in crowds, trouble following conversations with more than one person, balance and muscle coordination, dizziness, headaches, neck pain."

Rossbach submitted two conflicting medical reports in support of her application: (1) an August 2012 medical examination form completed by Norman P. Einhorn, O.D., M.S., a neuro-optometrist, indicating Rossbach is not totally and permanently disabled or unable to perform her job duties or any other job; and (2) a September 2012 medical examination form completed by David J. Frank, M.D., a neurologist, indicating that Rossbach is totally and permanently disabled and no longer able to perform her job duties or any other job.[1]

The Board's medical expert, Steven Lomazow, M.D., a neurologist, evaluated Rossbach "for any possible neurological causes of disability in conjunction with her application for ordinary disability as a corrections officer."

_____

[1] In a earlier June 2012 report, Dr. Frank stated: Rossbach "does not appear to be able to return to her previous occupation as a corrections officer." She was "maintained on out-of-work status" by Dr. Frank.

3                                                                          A-4967-17T4

After reviewing Rossbach's application and medical records, Dr. Lomazow issued an October 22, 2012 report in which he concluded:

> I am not presented with any objective evidence whatsoever that Ms. Rossbach has a neurological disease. The logical conclusion why seven neurologists could not find anything wrong with her is because there is not anything neurologically wrong with her. She appears to have an ongoing problem with a conversion reaction. While there may be other reasons why Ms. Rossbach cannot perform her job as a County Correction Officer, it is not neurological in nature so, therefore, there is no objective basis on my examination or quite frankly that of any other practitioner with respect to any neurologic disability whatsoever including any that might inhibit her from performing her job as a County Correction Officer. As noted above, it is conceivable that her disability might lie in a different sphere, i.e., psychiatric but this is not the point of my examination. Once again, from a neurologic standpoint there is no disability to qualify her for an ordinary disability with respect with her ability to perform her job as a County Correction Officer.

On December 10, 2012, the Board denied Rossbach's application, determining she was "not totally and permanently disabled from the performance of [her] regular and assigned duties." The Board informed Rossbach she qualified for deferred retirement. Rossbach appealed.

The Board transferred the matter to the Office of Administrative Law. An ALJ conducted a hearing in August 2016, where Rossbach and Steven Greco,

4

Ph.D., a neuropsychologist, testified. Dr. Lomazow did not testify at the hearing because he had evaluated Rossbach for a neurological disability; Dr. Greco explained Rossbach's disability was neuropsychological.

Rossbach recounted her 2011 hospitalization, symptoms, and visits to multiple physicians, including Dr. Greco who testified he has treated Rossbach for over four years (over eighty visits). Dr. Greco opined Rossbach suffers from conversion disorder. He explained:

> [C]onversion disorder is when a patient presents as though they have neurological symptoms. It could either be motor [or sensory symptoms]. So naturally with those symptoms you're going to go to a physician to make sure you're okay. But then as you keep going and keep getting all diagnostic tests and they come back normal . . . they start saying [there] is a psychological reason to why they're having these physical symptoms. Now, the reason patients end up with a conversion disorder, it's not a one to one correlation, but there's usually a lot of trauma in the background with the patient. They've usually been exposed to something that they have not been able to handle. And psychologically these emotions manifest physically. Hence, then once it's ruled out that it's not a medical neuropsychological disorder so you have to have an incompatibility between medical findings and the patient's symptoms. Once that's established and you have those motor sensory symptoms you can meet criteria for conversion disorder.

According to Dr. Greco, Rossbach's 2011 medical crisis "set into motion" her physical symptoms and resulting conversion disorder. He noted conversion

5

disorder is a "complex psychological disorder" and "statistically there's no cure." Dr. Greco stated Rossbach "will not be able to handle gainful employment given the intensity, frequency and type of psychological disorders" she suffers from, and "should not work as a correction officer."

Because Dr. Lomazow did not testify, the parties agreed to the following stipulations regarding his qualifications and the evaluation he was requested to perform:

> 1. Dr. Lomazow was requested to evaluate Ms. Rossbach to determine neurologic causes of disability only, in conjunction with her application for ordinary disability.
>
> 2. As part of his medical education, Dr. Lomazow did not participate in or complete a residency in psychiatry or psychology.
>
> 3. Dr. Lomazow is not professionally qualified to practice psychiatric medicine and is not a psychiatrist.
>
> 4. Dr. Lomazow is not professionally qualified to practice in the field of psychology or neuro-psychology and is not a psychologist or neuro-psychologist.
>
> 5. Dr. Lomazow is not qualified to perform and interpret a Neuropsychological Examination as was performed by Dr. Greco on [June 12, 2012].

In his March 29, 2017 initial decision, the ALJ made the following findings of fact:

A-4967-17T4

1. On December [10], 2012, the Board denied Rossbach's application for ordinary disability retirement benefits.

2. On December 11, 2012, the Board determined that Rossbach, with her years of service, qualified for a deferred retirement.

3. Rossbach enrolled in the PFRS on March 1, 1999, as a correction officer employee of Monmouth County.

4. The Board reflected Rossbach's resignation and termination date as September 30, 2012.

. . . .

6. Rossbach at the time of the application for ordinary disability retirement was age thirty-two.

7. No medical evidence presented within six-months of the May 24, 2012, application for ordinary disability retirement objectively found petitioner disabled.

8. Petitioner did submit a June 2013, report by Dr. Greco, more than six months after the denial of ordinary disability benefits. This report did not set forth a permanent disability, just that petitioner could not perform her duties.

9. Dr. Greco's . . . cognitive evaluation reflected petitioner as normal.

10. Dr. Greco's June 2013, report reflected no objective neurological medical reason for petitioner's condition.

11. Petitioner did submit an April 2016 report by Dr. Greco. This report did psychologically opine that petitioner suffered from PTSD and conversion disorder,

7

but again did not set forth a permanent disability, rather a disability with a poor diagnosis.

Due to the "existence of the conflicting medical reports of the two treating doctors as to totality and permanency," the ALJ concluded he "need not consider the report of the Board's expert," and would "not attribute a negative inference from[] his failure to testify." The ALJ noted Dr. Lomazow's "expertise and examination" of Rossbach related to her alleged diagnosis for neurological conditions. Therefore, the value of his testimony was questionable.

The ALJ concluded "that as of the date of the denial by the Board, the petitioner had not met her burden of proof that she was totally or permanently disabled as a result of a physical medical condition." In reaching that conclusion, the ALJ engaged in the following analysis of the evidence, or lack thereof:

> There are concerns regarding the mental health aspects of petitioner's claim. The original application for disability occurred on May 24, 2012, three requests were made for medical documentation. None of the medical documentation supported an objective medical illness . . . . The report of Dr. Greco did not issue until more than six months later [on] June 30, 2013, though there was reference in Dr. Frank's report in July 2012. Dr. Greco's report issued well after six months from the time of the original disability filing. That report was insufficient on its face to support a psychological permanency. During that time petitioner[] did not seek

A-4967-17T4

to amend the pension application or submit a new pension application based upon the mental health disability. Accordingly, the Board did not have the petitioner examined for a mental health disability. The parties did not address issues of notice or reliance. This tribunal is unable to determine whether any accommodation should be made to petitioner to allow an amendment to the retirement application at this time, and to allow the petitioner be reexamined by a psychologist or psychiatrist. The 2016[] report of Dr. Greco again fails to confirm permanency of the disability.

I CONCLUDE the December [10], 2012, denial of the physical disability pension, and the December 28, 2012 appeal, limited the jurisdiction of this tribunal to a consideration of the denial of the physical disability pension. Rossbach has not shown she was totally and permanently disabled, from a physical disability at the time of the application.

The ALJ recommended denial of petitioner's application for ordinary disability benefits. Rossbach filed exceptions to the initial decision. On May 8, 2017, the Board adopted the ALJ's initial decision affirming the Board's denial of Rossbach's application for ordinary disability retirement benefits. This appeal followed.

On appeal, Rossbach raises the following points:

POINT I

THE BOARD FAILED TO EVALUATE OFFICER ROSSBACH FOR PSYC[H]OLOGICAL [OR] PSYCHIATRIC DISABILITY EVEN [THOUGH] IT

9

WAS ADVISED, BY [ITS] MEDICAL EXPERT, THAT THE DISABILITY SHE SUFFERED WAS LIKELY CAUSED BY A PSYCHOLOGICAL [OR] PSYCHIATRIC DISEASE. (Not Raised Below).

POINT II

THE BOARD FAILED TO CANCEL OFFICER ROSSBACH'S APPLICATION FOR DISABILITY BENEFITS AND OFFICER ROSSACH SHOULD HAVE BEEN EVALUATED FOR PSYCHOLOGICAL [OR] PSYCHIATRIC DISABILITY. (Not Raised Below).

II.

"Our review of administrative agency action is limited." Russo v. Bd. of Trs., Police & Firemen's Ret. Sys., 206 N.J. 14, 27 (2011) (citing In re Herrmann, 192 N.J. 19, 27 (2007)). "Judicial review of an agency's final decision is generally limited to a determination of whether the decision is arbitrary, capricious, or unreasonable or lacks fair support in the record." Mattia v. Bd. of Trs., Police & Firemen's Ret. Sys., 455 N.J. Super. 217, 221 (App. Div. 2018) (quoting Caminiti v. Bd. of Trs., Police & Firemen's Ret. Sys., 431 N.J. Super. 1, 14 (App. Div. 2013)). "A reviewing court 'may not substitute its own judgment for the agency's, even though the court might have reached a different result.'" In re Stallworth, 208 N.J. 182, 194 (2011) (quoting In re Carter, 191 N.J. 474, 483 (2007)). "The burden of demonstrating that the agency's action

was arbitrary, capricious or unreasonable rests upon the person challenging the administrative action." In re Arenas, 385 N.J. Super. 440, 443-44 (App. Div. 2006) (citations omitted).

"Generally, courts afford substantial deference to an agency's interpretation of a statute that the agency is charged with enforcing." Richardson v. Bd. of Trs., Police & Firemen's Ret. Sys., 192 N.J. 189, 196 (2007) (citation omitted). "Such deference has been specifically extended to state agencies that administer pension statutes," because "a state agency brings experience and specialized knowledge to its task of administering and regulating a legislative enactment within its field of expertise." Piatt v. Police & Firemen's Ret. Sys., 443 N.J. Super. 80, 99 (App. Div. 2015) (quoting In re Election Law Enf't Comm'n Advisory Op. No. 01-2008, 201 N.J. 254, 262 (2010)). We are not bound, however, "by the agency's interpretation of a statute or its determination of a strictly legal issue." Richardson, 192 N.J. at 196 (quoting In re Taylor, 158 N.J. 644, 658 (1999)).

### III.

A PFRS "member can qualify for ordinary disability benefits if [she] is disabled for any reason; the disability need not have a work connection." Russo, 206 N.J. at 28 (citing Richardson, 192 N.J. at 195). A PFRS member who meets age and service criteria may be retired on an ordinary allowance:

11

provided, that the medical board, after a medical examination of such member, shall certify that such member is mentally or physically incapacitated for the performance of his usual duty and of any other available duty in the department which his employer is willing to assign to him and that such incapacity is likely to be permanent and to such an extent that he should be retired.

[N.J.S.A. 43:16A-6(1).]

An application for physical or mental health medical disability retirement must "be supported by at least two medical reports" and such "documentation must be received within six months" of the application's filing date, otherwise "the retirement will be cancelled and the member must complete a new disability application for a future retirement date." N.J.A.C. 17:4-6.1(d)(1)-(2). The petitioner bears the burden of proving she is entitled to ordinary disability benefits. See Patterson v. Bd. of Trs., Police & Firemen's Ret. Sys., 194 N.J. 29, 50-51 (2008) (stating that a PFRS "member who seeks accidental disability benefits must prove a disabling permanent mental injury and, in so doing, must produce such expert evidence as is required to sustain that burden").

Rossbach contends the Board had knowledge of her psychological/psychiatric disability as early as October 2012 when Dr. Lomazow issued his report. She argues "the Board had the affirmative obligation to schedule an independent psychiatric examination to appropriately

12

evaluate [her] for her alleged disabling condition," citing N.J.A.C. 17:2-6.26. Rossbach further contends the Board "should have cancelled the retirement application, and thereupon require[d] [her] to refile with supporting medical documentation of her psychiatric/psychological disability." We are unpersuaded by these arguments.

Rossbach inaccurately asserts Dr. Lomazow, in his October 2012 report, concluded she suffered from a psychological disorder. Dr. Lomazow did not examine Rossbach for a psychological or psychiatric disorder, much less render a psychological or psychiatric diagnosis. Rather, Dr. Lomazow stated "it is conceivable that her disability might lie in a different sphere, i.e., psychiatric but this is not the point of my examination."

Rossbach contends the Board failed to comply with N.J.A.C. 17:2-6.26 by not obtaining an "'independent medical evaluation' when the medical evidence submitted is not sufficient." We disagree. N.J.A.C. 17:2-6.26 addresses medical evaluations for the Public Employees' Retirement System (PERS) members; Rossbach is a PFRS member. The corresponding PFRS regulation, N.J.A.C. 17:4-6.13, does not impose a duty on the Board to schedule an independent medical evaluation. On the contrary, it only requires that the physician designated to perform the medical examination "not be a member's personal

physician."[2]  Moreover, whether a PERS or PFRS member, "[t]he applicant for ordinary disability retirement benefits has the burden to prove that he or she has a disabling condition and must produce expert evidence to sustain this burden." Bueno v. Bd. of Trs., Teachers' Pension & Annuity Fund, 404 N.J. Super.119, 126 (App. Div. 2008) (citing Patterson, 194 N.J. at 50-51).

Lastly, Rossbach claims the Board should have cancelled her application because documentation supporting a mental disability was not provided.  We disagree.

An ordinary disability retirement benefit application must be "supported by at least two medical reports" submitted "within six months of the date of the disability retirement application.  N.J.A.C. 17:4-6.1(d).  Rossbach submitted two medical reports within six months of filing her disability application.[3]  An application can only be canceled by the Board pursuant to N.J.A.C. 17:4-6.1(d) if two medical reports are not timely submitted.  That did not occur here.

---

[2]  We further note that N.J.A.C. 17:2-6.26 does not require a second evaluation for a mental disability when the application originated from a physical medical disability claim and an evaluation for a physical disability has already been obtained.

[3]  Rossbach timely submitted Dr. Einhorn's August 2012 report and Dr. Frank's September 2012 report in support of her May 2012 application for ordinary disability retirement benefits based on her alleged physical medical condition.

14                                                          A-4967-17T4

The Board concluded Rossbach did not prove she had a total and permanent physical disability. The record fully supports that determination.

Dr. Lomazow and seven of Rossbach's neurologists found no objective medical evidence of any neurological disease or condition, much less a total and permanent physical disability caused by such a disease or condition. Repeated neurological testing revealed a normal neurological examination and did not support a diagnosis of ADEM, the medical condition identified in Rossbach's application. Moreover, Dr. Greco agreed there was no objective neurological evidence for her symptoms.

The Board must distinguish between a physical and a mental disability when granting ordinary disability retirement benefits. N.J.S.A. 43:16A-6(1). The regulations also distinguish between a "physical disability retirement" and a "mental health medical disability retirement." N.J.A.C. 17:4-6.1(d)(1)-(2). Either type of application must be supported by at least two medical reports. Ibid.

Rossbach's application listed her disability as ADEM and her symptoms as: "disorientation in crowds, trouble following conversations with more than one person, balance and muscle coordination, dizziness, headaches, and neck

pain." These are physical medical conditions. Noticeably absent are any identified mental health conditions.

Despite repeated requests from the Board for additional documentation, Rossbach did not submit a medical report in support of a mental disability until June 2013, more than a year after filing her application.[4] Moreover, Rossbach did not attempt to amend her application or submit a new application based on a mental health disability.

In sum, the Board's final decision was not arbitrary, capricious or unreasonable and is supported by adequate, substantial, and credible evidence in the record. Rossbach did not meet her burden of proving she has a disabling physical medical condition.

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

---

[4] We note that the June 2013 report did not confirm permanency of Rossbach's alleged mental health disorder.

A-4967-17T4