**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1390-23

DAVID CINCOTTA,

    Plaintiff-Appellant,

v.

BOROUGH OF LONGPORT,

    Defendant-Respondent.

_____

Argued January 21, 2025 – Decided May 12, 2025

Before Judges Sabatino, Jacobs and Jablonski.

On appeal from the Superior Court of New Jersey, Law Division, Atlantic County, Docket No. L-3111-21.

Stuart J. Alterman argued the cause for appellant (Alterman & Associates, LLC, attorneys; Stuart J. Alterman, on the brief).

Jennifer B. Barr argued the cause for respondent (Cooper Levenson, PA, attorneys; Jennifer B. Barr, on the brief).

PER CURIAM

David Cincotta, a former sergeant with the Longport Police Department ("LPD"), appeals from a December 7, 2023 Law Division order sustaining the municipality's termination of his employment. We affirm.

I.

Cincotta was employed with the Borough of Longport, a non-civil service jurisdiction, for more than eighteen years. In 2001, he began as a dispatcher for the LPD. In 2003, he became a police officer and was promoted to sergeant in 2016. Central to the issue on appeal is Cincotta's purported mishandling of drugs during a traffic stop and arrest in Linwood, which ultimately resulted in his termination from the LPD.

The record shows that in the early morning of November 11, 2019, Cincotta responded to assist Officers Alessandro Morelli and Quinton Wright with a motor vehicle stop. During the stop, Cincotta searched a suspect without donning any personal protective equipment, such as gloves. He recovered a glass tube, identified in a subsequent police report as paraphernalia "used to smoke crack cocaine." Continuing the search, Cincotta uncovered suspected crack cocaine, which he described in his testimony as "two or three small stones and powder and small pieces of paper." After securing the suspect in a patrol car, Cincotta found "a few more stone-like pieces [from] where [the passenger]

was seated." For approximately six minutes thereafter, Cincotta continued to manipulate the objects with ungloved hands. At Officer Wright's suggestion, Cincotta eventually donned gloves. Arriving at the stationhouse, Cincotta removed his gloves and consumed food "with his yet unwashed hands."

Infraction and Investigation

Later that day, Chief of Police Frank Culmone conducted a random drug test pursuant to the Attorney General Drug Testing Policy for Law Enforcement (the NJAG policy). Cincotta was one of four officers randomly selected for the drug test. Pursuant to the NJAG policy, Cincotta completed an acknowledgement form and medication sheet but failed to report exposure to cocaine earlier in the day. He also provided a urine sample, which was sent to the New Jersey State Police Laboratory for urinalysis. The sample yielded a positive test result for cocaine and benzoylecgonine, a metabolite of cocaine, a controlled dangerous substance (CDS).[1] Cincotta was suspended with pay, pending resolution of disciplinary action.

At Chief Culmone's direction, Sergeant James Silva initiated an investigation. Silva's investigation consisted of reviewing Cincotta's toxicology

---

[1] We take judicial notice that cocaine is a Schedule II prohibited controlled dangerous substance pursuant to N.J.S.A. 2C:35-10(a)(1).

report, incident reports prepared by Cincotta, Morelli, and Wright, as well as applicable rules, regulations, directives, and procedures. Aside from document review, Silva interviewed all parties involved in the chain of custody of the CDS, including Wright and Morelli, who witnessed Cincotta's actions.

On March 1, 2020, Silva determined that Cincotta had violated several LPD Rules and Regulations, including: 3.3.6 (performance of duty); 3.12.2 (failure to follow procedures for handling evidence); 3.3.2(R) and 3.4.3 (positive test results of illegal drug use); and 4.1.5 (illegal drug use). Silva's report also noted the DEA warning titled "DEA Warning to Police and Public: Fentanyl Exposure Kills", which was incorporated into the Department Operations Directive and signed by Cincotta on October 2, 2016. Ultimately, Silva concluded that Cincotta's "behavior on the scene was careless, exhibited levels of incompetence, and a lack of understanding to the real threat of exposure to unknown chemical substances."

On March 9, 2020, Culmone served a notice of charges, informing Cincotta that all charges against him were sustained and that he was entitled to a departmental hearing should he so request. Cincotta requested a hearing.

Departmental Hearing

A four-day departmental hearing was conducted by Hearing Officer

Steven Secare on various dates in May, June, and July 2021. Silva and Culmone testified on behalf of the Borough. Cincotta testified on his own behalf and called character witnesses and a pharmacology/toxicology expert, Dr. Harry A. Milman, to testify on his behalf.

Culmone testified regarding technical aspects of the drug testing procedure, adding that he "had concerns about [Cincotta's] performance," considering he had not submitted any performance evaluations since 2018 and was chronically late to work. Silva testified that he conducted the internal affairs investigation pursuant to a request from the Chief of Police and in accordance with the requisite protocol.

In his testimony, Cincotta claimed he was unsure whether the stone-like objects he picked up from the ground were crack cocaine. He also maintained that his nail-biting habit may have contributed to the potential ingestion of cocaine. He attributed any diminished work ethic to his personal life circumstances and denied consuming any illicit substances.

Dr. Milman was called by Cincotta and qualified as an expert in the fields of pharmacology and toxicology. The expert testified that the combined effect of transdermal contamination, potential ingestion, and potential inhalation could account for Cincotta's positive test results. However, in his report, Dr. Milman

5

stated that the amount of cocaine entering Cincotta's system "undoubtedly was more than it would have been had his exposure to cocaine been only by [trans]dermal contact." On cross-examination, he conceded the amount of benzoylecgonine in Cincotta's system was significantly higher than that found in the urine of a narcotic criminalist, one who routinely handles cocaine as part of their job in a narcotics laboratory.

At the conclusion of the proceeding, Hearing Officer Secare sustained all the violations against Cincotta. Secare determined that Cincotta's defense of accidental ingestion through transdermal absorption via gloveless exposure and nail-biting habits were not "exempti[ve]," and concluded that the Borough proved by a preponderance of the evidence that Cincotta tested positive for illegal drug use.

The Borough adopted Secare's findings, generating their position in a Final Notice of Disciplinary Action ("FDNA") sent to Cincotta. Pursuant to N.J.S.A. 40A:14-150,[2] which permits a non-civil service municipality member to seek de novo review of a disciplinary conviction, Cincotta filed a complaint in the Superior Court.

---

[2] N.J.S.A. 40A:14-150 provides that "[a]ny member or officer of a police department or force in a municipality . . . who has been tried and convicted upon any charge or charges, may obtain a review thereof by the Superior Court . . . ."

A-1390-23

<u>Law Division Review</u>

Judge Danielle Walcoff conducted a de novo review of the evidence, affirming the charges and discipline imposed in a memorandum of decision and written order. The judge concluded that the language of the guidelines is unambiguous and does not carve out exceptions for "accidental exposure or accidental ingestion." The judge also determined she was not bound by administrative decisions and unpublished opinions that recognized accidental ingestion as a justification for downgrading a penalty of termination to suspension. Finally, the judge determined termination to be a proportionate punitive sanction, concluding:

> The [c]ourt must determine whether the penalty is so disproportionate to shock one's sense of fairness. In the light of the entire circumstances involved in the case at bar, the [c]ourt finds that [d]efendant established just cause and termination is appropriate and clearly within the appropriate range of discipline. This [c]ourt considered [p]laintiff's admitted violation of proper processing of evidence protocols, the nature of the conduct and the impact of the misconduct on the public interest and public safety, [p]laintiff's positive drug test and the New Jersey Attorney General Guidelines. The [c]ourt finds [d]efendant met its burden of proof by a preponderance of all of the credible evidence. Plaintiff's actions are not compliant with the standard of responsibility and conduct imposed upon police officers. The [c]ourt finds that considering all of the circumstances, termination is an appropriate penalty. The [c]ourt finds that [p]laintiff's disregard of the rules

7

and regulations regarding the handling of evidence, particularly in the setting of CDS, coupled with Plaintiff's positive toxicology result, are serious and removal is appropriate. The [c]ourt is convinced that termination is not so disproportionate to the offenses in light of all of the circumstances and the seriousness of the charges revealed by the evidence; termination is not shocking to one's sense of fairness in this specific case. The [c]ourt finds [p]laintiff's termination to be an appropriate penalty.

[(citing In re Herrman, 192 N.J. 19, 28-29 (2007))]

II.

On appeal, Cincotta maintains his transdermal exposure was accidental and therefore did not run afoul of the NJAG policy. Moreover, he asserts that because he had not consciously ingested a CDS, he had not violated the NJAG policy. Last, Cincotta posits his discipline was improperly subjected to the "ultimate" punishment rather than progressive discipline, and that the court unlawfully exercised their discretion to terminate his employment.

Having reviewed the record, we affirm rejection of these arguments, all raised below, substantially for the reasons set forth in the memorandum of decision issued by Judge Walcoff. We add the following comments.

Appellate courts play a limited role in reviewing de novo proceedings. In re Phillips, 117 N.J. 567, 579 (1990). Accordingly, an appellate court will affirm the decisions of the hearing officer and the de novo trial court unless they are

8

arbitrary, capricious, unreasonable, or unsupported "by substantial credible evidence in the record as a whole."  Ibid.; see also Grubb v. Borough of Hightstown, 353 N.J. Super. 333, 353 (App. Div. 2002).  Legal questions, however, are reviewed de novo.  Bowser v. Bd. of Trs., Police & Firemen's Ret. Sys., 455 N.J. Super. 165, 170-71 (App. Div. 2018).

Accidental Ingestion Defense and NJAG Policy

The NJAG policy "mandates that officers who test positive shall be terminated from employment" to implement its purpose of "deterring illegal drug use by law enforcement officers."  Off. of the Att'y Gen., Attorney General's Law Enforcement Drug Testing Policy 1 (rev. Feb. 2023), https://www.nj.gov/oag/dcj/njpdresources/pdfs/Law-Enforcement-Drug-Testing-Policy_rev-Feb-2023.pdf.  The policy provides "[e]very law enforcement agency under the authority of the Attorney General must implement a drug testing program consistent with this policy."  Ibid.  Accordingly, the LPD adopted a regulation, which states in part "[a]ny employee who produces a confirmed positive test result for illegal use of drugs will be . . . [d]ismissed from employment."  Longport Police Dep't Rules & Reguls. § 3.4.3.  "All members shall fully comply with the departmental drug testing policy and procedures, and the Attorney General's Drug Testing Policy."  § 3.3.2(R).

9

Cincotta urges us to adopt an "accidental exposure" defense to termination resulting from positive drug tests, which has been recognized by administrative bodies. In re LaShauna Swinney, City of Jersey City, No. CSR 08976-10, initial decision (Dec. 21, 2010), njlaw.rutgers.edu/collections/oal/html/initial/csr08976-10_3.html.; In re Dennis Turner, No. CSR 00472-22, 2022 N.J. AGEN. LEXIS 430 (June 29, 2022). Cincotta also cites two unpublished decisions by this court, upholding the Civil Service Commission's discretion to downgrade penalties from termination to suspension, under certain circumstances.

As the trial court properly noted, unpublished opinions and administrative legal determinations are not binding and have no precedential value. See R. 1:36-3 ("No unpublished opinion shall constitute precedent or be binding upon any court."); Mattia v. Bd. of Trustees, Police and Firemen's Ret. Sys., 455 N.J. Super. 217, 221 (App. Div. 2018) ("[W]e are not bound by an agency's statutory interpretation or other legal determinations."). As such, we do not consider them. Instead, our decision is guided by the applicable law, namely the NJAG policy and the pertinent LPD rules and regulations.

There is no ambiguity in the NJAG policy or the LPD regulations. The policy and regulations make clear that termination is predicated on a "positive

test result," not limited to intentional—as opposed to accidental—ingestion of CDS. This court has recognized that in cases "where an employer was presented with a positive drug test result for [an] employee, there was nothing improper or unlawful in the employer's perceiving [this] employee as a user of illegal drugs" and terminating an employee on that ground. Vargo v. Nat'l Exch. Carriers Ass'n, 376 N.J. Super. 364, 383 (App. Div. 2005).

We perceive no basis to upset the Borough's termination of Cincotta. As the hearing officer properly determined, Cincotta was reckless in mishandling substances which circumstances plainly suggested was CDS, failing to clean his hands, and consuming food with his contaminated hands. We also take judicial notice that a police officer's proper handling of physical evidence is of vital importance. Cincotta's expertise, training, and years of service added to conclusive proof, as found by the hearing officer, that his behavior as a police officer handling the CDS, was in no way legally justifiable.

In affirming the Borough's decision, the trial court noted the "clear and unambiguous" language of the guidelines which does not distinguish between "intentional illegal drug use and accidental exposure[,]" as well as Cincotta's self-inflicted "accidental exposure." The credible evidence before both the hearing officer and Judge Walcoff well-supported Cincotta's termination.

Grubb, 353 N.J. Super. at 353.

Progressive Discipline

N.J.S.A. 40A:14-147 provides:

> no permanent member or officer of the police department or force shall be removed from his office, employment or position for political reasons or for any cause other than incapacity, misconduct, or disobedience of rules and regulations established for the government of the police department and force, nor shall such member or officer be suspended, removed, fined or reduced in rank from or in office, employment, or position therein, except for just cause.

To ensure "proportionality and uniformity in the rendering of discipline of public employees[,]" our Supreme Court adopted the principles of progressive discipline which predicate the severity of the punishment upon the seriousness of the offense committed and the employee's disciplinary record. In re Stallworth, 208 N.J. 182, 195 (2011). In instances where an employee "engag[ed] in conduct that is unbecoming to the position[,]" we upheld the employee's termination regardless of his disciplinary record, or lack of it. Herrmann, 192 N.J. at 34. Pertinently, dismissal of an officer with an unblemished record "for [a violation] that went to the heart of the officer's ability to be trusted to function appropriately in his position" does not contravene the principles of progressive discipline. Id. at 35 (citing Cosme v.

E. Newark Twp. Comm., 304 N.J. Super 191, 206 (App. Div. 1997)). That is so because "the theory of progressive discipline [is not] a fixed and immutable rule to be followed without question." In re Carter, 191 N.J. 474, 484 (2007).

In reviewing disciplinary measures, we have held courts "should take care not to substitute their own views of whether a particular penalty is correct for those of the body charged with making that decision." Id. at 486. Instead, courts should determine "whether such punishment is 'so disproportionate to the offense, in the light of all the circumstances, as to be shocking to one's sense of fairness.'" In re Polk License Revocation, 90 N.J. 550, 578 (1982) (quoting Pell v. Bd. of Educ., 34 N.E.2d 321, 327 (N.Y. 1974)).

Here, the Borough determined that termination is a proportionate penalty given the seriousness of the offense. In reaching its decision, the Borough considered the "egregious" nature of Cincotta's conduct, the impact of his conduct on public safety, his positive drug test, and the applicable policy and regulations. In particular, the Borough noted that "in cases where the charges against Cincotta involve acts which in view of the duties and obligations of the positions substantially disadvantage the public, removal may be imposed without regard to the tenets of progressive discipline." The trial court also emphasized this point, stating that "[Cincotta's] disregard of the rules and

regulations regarding the handling of evidence, particularly in the setting of CDS, coupled with [Cincotta's] positive toxicology result, are serious" such that termination is appropriate and "not shocking to one's sense of fairness in this specific case." Thus, the ultimate finding that Cincotta tested positive for cocaine in violation of the pertinent rules and regulations was well-supported by the record of credible evidence before the hearing officer and Judge Walcoff. Cincotta's termination was proportionate and justified.

We concur with the findings that Cincotta's complete disregard for safety measures was egregious. As a police officer with eighteen years of experience, Cincotta is "a special kind of public employee. His primary duty was to enforce and uphold the law . . . . He represents law and order to the citizenry and must present an image of personal integrity and dependability in order to have the respect of the public." Township of Moorestown v. Armstrong, 89 N.J. Super. 560, 566 (App. Div. 1965). Because Cincotta's violation of the pertinent policy and regulations "went to the heart" of his ability to dutifully carry out his responsibilities and constituted conduct so "unbecoming" a police officer, termination was a proportionate punishment, notwithstanding his favorable disciplinary record. Herrmann, 192 N.J. at 34-35.

To the extent that we have not addressed any arguments raised, they lack sufficient merit to warrant discussion in a written decision.  R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

*M.C. Harley*

Clerk of the Appellate Division

A-1390-23